ERIC THALER VS. THE AMERICAN INSURANCE COMPANY.

No. 91-P-1092.

Middlesex. February 12, 1993. - June 22, 1993.

Present: ARMSTRONG, BROWN, & PORADA, JJ.

*Consumer Protection Act*, Insurance, Unfair act or practice. *Insurance*, Motor vehicle insurance, Unfair act or practice.

The court announced that, henceforth, the insistence on a release by an insurer as a condition of payment of the policy limits where liability of its insured is undisputed and damages clearly exceed the policy limits is an unfair settlement practice in violation of G. L. c. 176D, § 3(9)(*f*), subject to the penalties of G. L. c. 93A. [642-643]

In an action under G. L. c. 93A, § 9, against an insurance company, claiming an unfair settlement practice in the defendant insurer's requiring the plaintiff to execute a release as a condition to receiving payment of the policy limits where his claim exceeded the policy limits and liability was not in question, where the insurer's liability in such circumstances was then uncertain as matter of law and the insurer's interpretation of its duty to its insured was merely mistaken, there was no violation of G. L. c. 93A. [643]

CIVIL ACTION commenced in the Superior Court Department on May 25, 1989.

The case was heard by *Katherine Liacos Izzo*, J., on a motion for summary judgment.

*Myles W. McDonough* for the defendant.
*John Foskett* for the plaintiff.

PORADA, J. The plaintiff filed suit in the Superior Court against the defendant (American) on the grounds that American had violated the provisions of G. L. c. 93A, § 9, in requiring that he execute a release of his claim against American's policyholder as a condition to receiving payment of the policy limits where his claim exceeded the policy limits and liability was not in question. The plaintiff moved for summary judgment. The Superior Court judge allowed the plain-

tiff's motion and awarded attorney's fees and multiple damages in the amount of $220,000, twice the $110,000 coverage available to a claimant under the policy. American moved for reconsideration. The judge denied the motion. From the ensuing judgment, American appeals claiming that its action was not a violation of G. L. c. 93A and that the judge erred by applying G. L. c. 93A, § 9(3), as amended through St. 1989, c. 580, § 1,[1] retroactively in her assessment of multiple damages. We reverse the judgment.

The facts are undisputed. On July 30, 1987, the plaintiff suffered serious and permanent injuries when the vehicle in which he was a passenger left the roadway and collided with a tree. The vehicle was leased to one Olga Perez, whose son was driving the vehicle at the time of the accident. The vehicle was covered by a policy issued by American. The policy provided bodily injury coverage in the amount of $100,000 per person and underinsured coverage in the amount of $10,000 per person. Concluding that liability was not in question and that the plaintiff's claim would exceed the policy limits, American offered the plaintiff the full policy limits of $110,000[2] conditioned on the plaintiff's execution of a release of its insured and her son. The plaintiff refused to execute the release and made a demand under G. L. c. 93A, § 9, for payment of the sum of $110,000. American declined to make payment without the requested release. As a result, the plaintiff filed this action.

In allowing summary judgment for the plaintiff, the Superior Court judge relied upon *Bertassi v. Allstate Ins. Co.*, 402 Mass. 366 (1988). In *Bertassi*, the Supreme Judicial Court ruled that an insurer's insistence that its insured exe-

---

[1] Statutes 1989, c. 580, § 1, approved December 5, 1989, inserted the fourth sentence in G. L. c. 93A, § 9(3), which provides as follows: "For the purposes of this chapter, the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence, regardless of the existence or nonexistence of insurance coverage available in payment of the claim."

[2] American's belief that the plaintiff was entitled to the $10,000 limit under the underinsured coverage may have been mistaken. See *Nash* v. *Metropolitan Property & Liab. Ins. Co.*, 410 Mass. 1002 (1991).

cute an agreement protecting the insurer's subrogation rights as a condition to the insurer's payment of underinsurance benefits to him violated G. L. c. 93A, where the policies did not require any such agreement. *Id.* at 370-371. Here, the judge ruled that American's insistence upon a release of its insured from the claimant as a condition to payment likewise constituted a violation of G. L. c. 93A, because there was no requirement in the policy that a release be executed as a condition of payment.

On appeal, American argues that the judge should not have concluded its conduct constituted a violation of G. L. c. 93A, § 9, because it was uncertain as matter of law whether its duty to defend under the policy required it to obtain a release of its insured from liability in excess of the policy limits before payment of the policy limits. At the time judgment was entered in this case, this issue had not been decided by an appellate court in Massachusetts. Since then, we have held that an insurer's duty to defend does not terminate upon tendering the policy limits to a third-party claimant except where the policy limits are paid in settlement of the third party's claim against the insured (i.e., a release is obtained) or in full or partial satisfaction of a final judgment against the insured. *Aetna Cas. & Sur. Co.* v. *Sullivan*, 33 Mass. App. Ct. 154, 157 (1992).[3] The *Sullivan* case, how-

---

[3]After the *Aetna Cas. & Sur. Co.* v. *Sullivan*, 33 Mass. App. Ct. 154 (1992), case was decided, the standard automobile policy effective January 1, 1993, approved by the commissioner of insurance was amended to read, in pertinent part, as follows: "We have the right to defend any lawsuit brought against anyone covered under this policy for damages which might be payable under this policy. *We also have a duty to defend any lawsuit, but our duty to defend ends when we offer, tender, or pay to any claimant the maximum limits of coverage under this policy. We may end our duty to defend at any time during the course of the lawsuit, by offering, tendering or paying the maximum limits of coverage under the policy, without the need for a judgment or settlement of the lawsuit or a release by the claimant.*" (Emphasis supplied).

The change does not affect the result reached in this case, for it does not apply to any policy issued before January 1, 1993. For those policies issued thereafter, an insured would no longer have any reasonable expectation under the language of his or her policy to expect that the insurer would be required to obtain a release before paying out the maximum policy limits.

ever, did not address whether it would be a violation of G. L. c. 93A for an insurer to demand a release before paying out the full policy limits to a third-party claimant where a third party's claim exceeds the policy limits and liability is undisputed.

Unlike the *Bertassi* case, on which the motion judge relied, American here was not simply seeking to secure an added protection for itself but was faced with what it perceived to be a genuine conflict between its duty to its insured under its policy and its duty to a third-party claimant under G. L. c. 176D, § 3(9)(*f*) (1986 ed.), "to effectuate prompt, fair and equitable settlement of claims in which liability has become reasonably clear." While the policy in this case did not expressly provide that American require a release from a claimant before payment of the policy limits, implicit in every contract between an insurer and insured is a covenant of good faith and fair dealing. *Murach* v. *Massachusetts Bonding & Ins. Co.*, 339 Mass. 184, 186-189 (1959). *DiMarzo* v. *American Mut. Ins. Co.*, 389 Mass. 85, 97 (1983). In determining the scope of this obligation, the understanding or expectations of an objectively reasonable insured can be considered. *Hazen Paper Co.* v. *United States Fid. & Guar. Co.*, 407 Mass. 689, 700 (1990). *Aetna Cas. & Sur. Co.* v. *Sullivan*, 33 Mass. App. Ct. at 156. Ordinarily, because the payment of policy limits to a claimant removes a potential incentive for a claimant to settle with an insured, an insured arguably might expect that an insurer's covenant of good faith and fair dealing would require the insurer to obtain a release before paying out the limits of the coverage purchased.[4] See *Murach* v. *Massachusetts Bonding & Ins. Co.*, 339 Mass. at 187 (good faith requires an insurer in deciding whether to settle or try a case to act as if no policy limits were applicable to the claim). In these circumstances, however, where the liability of the insured is undisputed and the insurer has determined that damages clearly exceed the

---

[4]At least two other jurisdictions have so held. *Merritt* v. *Reserve Ins. Co.*, 34 Cal. App. 3d 858, 871 (1973). *Parito* v. *Sentry Indem. Co.*, 536 So. 2d 417, 422-423 (La. 1988).

policy limits, there are valid reasons why an objectively reasonable insured might not expect that its insurer's duty to defend or to act in good faith would require its insurer to insist upon a release before paying out its policy limits.

First, the Legislature has imposed upon insurers a duty to third-party claimants to "effectuate prompt, fair and equitable settlements of claims," G. L. c. 176D, § 3(9)(*f*), and has provided for the recovery of damages by third-party claimants from the insurers for failure to do so, G. L. c. 93A, § 9(1). See *VanDyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 675 (1983). Secondly, after the payment of the policy limits without a release the insured is not left without continuing representation provided by the insurer. See *Aetna Cas. & Sur. Co.* v. *Sullivan*, 33 Mass. App. Ct. at 157. Accordingly, the payment of the policy limits by an insurer without obtaining a release of its insured in these circumstances would not be perceived as unreasonable. Indeed, we decide that henceforth the insistence on a release by an insurer as a condition of payment of the policy limits where liability of its insured is undisputed and damages clearly exceed the policy limits amounts to an unfair settlement practice in violation of G. L. c. 176D, § 3(9)(*f*), for, contrary to the Legislature's intent to facilitate the compromise and settlement of insurance claims by subjecting insurers to the penalties of G. L. c. 93A, it forces claimants to litigate claims where liability is clear and monies are due under insurance policies. See *DiMarzo* v. *American Mut. Ins. Co.*, 389 Mass. at 97.

We conclude, however, that in this case American did not violate G. L. c. 93A. There was no violation of G. L. c. 176D, § 3(9)(*f*), because its own liability to the plaintiff was not "reasonably clear." As noted, there was no applicable precedent to guide American's action in a matter which presented a worthy question of law. See *Transamerica Ins. Group* v. *Turner Constr. Co.*, 33 Mass. App. Ct. 446, 452-453 (1992). Further, there is nothing in the record to suggest that American's actions were prompted by any ulterior motive rather than a reasonable, although mistaken, interpreta-

tion of its duty to its insured.[5] In these circumstances, there was no violation of G. L. c. 93A. *VanDyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. at 677. *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 14-15 (1989). *Riley* v. *Aetna Life & Cas. Co.*, 31 Mass. App. Ct. 910, 912 (1991).

In light of our decision, we need not address whether the judge correctly assessed damages in this case.[6]

*Judgment reversed.*

---

[5]When the plaintiff's motion for summary judgment was allowed, the insurer filed a motion for reconsideration of the plaintiff's motion for summary judgment accompanied by an affidavit which averred that the insurer had acted on the advice of independent counsel and had offered to file an action for declaratory relief to resolve the dispute between the parties which offer was rejected by the plaintiff. See *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 15-16 (1989). The plaintiff in its brief does not dispute these averments. In reaching our decision, we do not consider this material since it was not presented to the motion judge at the time of her ruling.

[6]The parties acknowledge that American has paid the policy limits of $110,000 to the plaintiff.