Cratsley, J.
The plaintiff, Christine Cooke, brought this action to recover damages sustained in an automobile accident with Cory Brousseau’ on August 15, 1992. Although the claims against the Brousseaus have been settled, the plaintiffs claim against Arbella Mutual Insurance Company (“Arbella”), the insurer of the Brousseau vehicle at the time of the accident, remains open. Specifically, in Count Five of her complaint, the plaintiff alleges that Arbella engaged in dilatory practices and refused to effectuate a prompt, fair and reasonable settlement of the plaintiffs claim. Both parties have now moved for summary judgment on the plaintiffs claim that Arbella engaged in unfair claim settlement practices in violation of G.L.c. 176D, §3(9)(f) and G.L.c. 93A, §9. For the foregoing reasons, defendant’s motion for summary judgment is allowed and plaintiffs motion is denied.
BACKGROUND
The undisputed facts from the complaint, depositions, affidavits, and answers to interrogatories are as follows: On August 15, 1992 the plaintiff and Cory Brousseau were involved in a motor vehicle accident. At the time of the accident, the Brousseau vehicle was insured by Arbella under a policy with a limit of $20,000.
Arbella first became aware of the nature of the plaintiffs injuries as a result of the accident when Geoffrey Wyler (“Wyler”), the plaintiffs attorney, forwarded a letter of representation to Arbella on September 16, 1992 which stated that “Ms. Cooke suffered substantial neuralgic [sic] injuries as a result of your insured’s gross negligence and wanton disregard for the safely of others.” On September 18, 1992 Timothy McNamara (“McNamara”), the claims adjuster from Arbella assigned to the plaintiffs claim, sent Wyler an initial letter requesting all medical reports, bills and lost wage documentation. From that date until November 2, 1993 McNamara telephoned Wyler nine times and sent six letters requesting documentation which would support the plaintiffs claim. Throughout this time period Arbella conducted an independent investigation of the plaintiffs claim, collecting police and operator’s reports, examining the locus of the accident, and conducting a surveillance of the plaintiff. On November 4, 1993 McNamara received from Wyler the plaintiffs medical reports and bills totalling approximately $5,624 and a demand for the policy limits of the Brousseau’s automobile insurance policy.
Upon receiving this information, Mr. McNamara called Wyler four times before Wyler responded and returned his call on January 3, 1994. This was the first phone call that Wyler made to Arbella regarding *639 this claim since September 16, 1992. Based on the medical records and bills forwarded on November 4, 1993, and the information contained in the claims file, Mr. McNamara offered to settle the claim for $11,300 during the phone conversation. In response, Wyler forwarded a letter to Arbella on January 3, 1994 in which he alleged that Arbella had violated G.L.c. 93A and G.L.c. 176D. Subsequently, on January 6, 1994, M.J. Laorenza, the claims supervisor at Arbella, sent a letter to Wyler asking him to state the basis of his claim that Arbella had engaged in dilatory settlement practices and why Arbella’s offer was unreasonable.
Mr. McNamara telephoned Wyler on February 2, 1994. Wyler did not return this call until February 22, 1994 when he filed the plaintiffs complaint against Cory Brousseau, Elaine Brousseau, and Arbella Insurance Company. Plaintiffs claim against Arbella alleged that Arbella’s conduct constituted unfair and deceptive practices in violation of G.L.c. 176D and G.L.c. 93A. Specifically, the plaintiff asserted that “[a]lthough the liability of Arbella’s insured, Elaine Brousseau, is clear, and the maximum policy amount is woefully insufficient to fully compensate the plaintiff for her damages, Arbella has utilized dilatory practices and refused to effectuate a prompt, fair and reasonable settlement of the plaintiffs claim.”
On March 7, 1994 M.J. Laorenza sent a letter to Wyler stating that Arbella wished to resolve the matter and requested that Wyler forward the balance of the plaintiffs medical bills, as the complaint alleged damages exceeding $9,000, but the records Wyler had forwarded to Arbella indicated total damages of $5,624. Subsequently, on July 13, 1994 Mr. Donovan, acting on Arbella’s behalf, tendered an offer of the policy limits to the plaintiff contingent upon the release of Arbella along with its insureds. The letter specifically stated that “[i]n consideration of the settlement we request a full release from your client releasing Cory Brousseau, Elaine Brousseau, and Arbella Mutual Insurance Company of all claims relating to this incident.” In response, Wyler sent a letter to Mr. Donovan on July 18, 1994 placing Arbella on notice that such a contingent demand was a further violation of 93A.
Thereafter, pursuant to the defendant’s discovery requests, the plaintiff forwarded her Answers to Interrogatories and Response to Request for Production of Documents on August 25, 1994 and September 30, 1994. The parties held a mediation conference on November 10, 1994. Subsequently, on December 2, 1994, Arbella offered the policy limits without the requirement of a release of Arbella as well. The plaintiff accepted that offer and a Stipulation of Dismissal with Prejudice of the action against the Brousseaus was entered.
DISCUSSION
Pursuant to Rule 56 of the Massachusetts Rules of Civil Procedure, the court will grant a motion for summary judgment if the pleadings, deposition, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Nashua Corp. v. First State Ins. Co., 420 Mass. 196, 202 (1995); American Tel. & Tel. Co., 418 Mass. 394, 397 (1994); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time Inc., 404 Mass. 14, 16-17 (1989). A court will grant summary judgment to the party entitled to judgement and “there is no real dispute [concerning] the salient facts” or if a case only involves a question of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983).
Pursuant to G.L.c. 176D, §3(9)(f), an insurance company’s failure to “effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear” constitutes an unfair settlement practice. G.L.c. 176D, §3(9)(f) (1994 ed.). Furthermore, our Supreme Judicial Court has held that G.L.c. 176D, §3 and G.L.c. 93A, §2 have concurrent application to unfair and deceptive insurance acts or practices, and a violation of G.L.c. 176D, §3 is a violation of G.L.c. 93A, §2. G.L.c. 93A, §2 (1994 ed.) (declaring unlawful “unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce”); G.L.c. 176D, §3(9)(f) (1994 ed.); Dodd v. Commercial Union Ins. Co., 373 Mass. 72, 79 (1977). Although summary judgment is rarely appropriate in an action brought under G.L.c. 93A because whether a given practice is unfair and deceptive under G.L.c. 93A depends on the circumstances of each case and a determination of the defendant’s knowledge and intent, the Supreme Judicial Court has upheld the grant of summary judgment where there is no genuine issue of material fact. Van Dyke v. St. Paul Fire & Marine Ins. Co., 388 Mass. 671, 678 (1983) (holding trial court properly enforced summary judgment for defendant in c. 93A action alleging insurance company did not conduct proper investigation in violation of c. 176D, §3(9)); Noyes v. Quincy Mut. Fire Ins. Co., 7 Mass.App.Ct. 723, 725 (1979) (noting c. 93A action an appropriate matter for summary judgment only if no issue of material fact exists), citing Lowell Gas Co. v. Attorney Gen., 377 Mass. 37, 39 n. 1 (1979); Don Lorenz, Inc. v. Northampton Nat’l Bank, 6 Mass.App.Ct. 933 (1978).
The plaintiff has failed to produce sufficient evidence at this summary judgment stage to establish that Arbella engaged in unfair or deceptive acts constituting unfair claims settlement practice. Based upon the undisputed facts, Arbella’s offer to settle the case for $ 11,300 did not constitute, as a matter of law, *640 a “failure to effectuate [a] prompt, fair and equitable settlement!) of [a] claim)] in which liability [was] reasonably clear.” G.L.c. 176D, §3(9)(f) (1994 ed.). When Arbella finally received the plaintiffs medical reports and bills totalling approximately $5,624 on November 2, 1993, fourteen months after first requesting them, the plaintiff failed to provide any documentation supporting a claim for lost wages. Accordingly, relying on these medical reports and bills, surveillance of the plaintiff, a statement from Cory Brousseau, and accident reports, Arbella’s initial offer of $11,300 on January 3, 1994 was fair and equitable.
Although arguably low, Arbella’s offer was not unreasonable and represented a sensible and logical negotiating position. Construing G.L.c. 176D, §3, the Court of Appeals for the First Circuit has noted that
Negotiating a settlement, particularly when the damages are unliquidated is, to an extent, a legitimate bargaining process. The statute does not call for defendant’s final offer, but only one within the scope of reasonableness. Experienced negotiators do not make their final offer first, and experienced negotiators do not expect it, or take seriously a representation that it is.
Forcucci v. U.S. Fidelity & Guar. Co., 11 F.3d 1, 2 (1st Cir. 1993). Rather than making a counter proposal, discussing the offer, or requesting an explanation of the basis or rational for the offer, Wyler responded to Arbella’s offer by sending a 93A demand letter on January 3, 1994. In light of the surrounding circumstances, Arbella’s initial offer of $11,300 to settle the plaintiffs claim was legally fair and equitable.
Furthermore, any delay in the settlement process was caused by the plaintiff. Wyler did not submit the medical reports and bills until November 2, 1993, more than a year after Arbella’s initial request for them. In fact, Wyler failed to respond to six letters and nine phone calls made to him beginning in September 1992 and continuing until November 2, 1993. Moreover, despite Arbella’s immediate evaluation of the plaintiffs claim on November 4, 1993, the same day they received the medical bills from Wyler, Arbella was unable to make the $11,300 offer until January 1, 1994 when Wyler finally returned the four phone calls Arbella had made to him beginning November 4, 1993. Accordingly, based upon the undisputed facts, Arbella’s conduct did not constitute an unfair claims settlement practice and Arbella is entitled to judgment as a matter of law.
Although the plaintiff also argues in its cross-motion for summary judgment that Arbella’s July 13, 1994 conditional offer constituted an unfair settlement practice, this Court will not consider this issue because it is not properly raised before the Court. Mass.R.Civ.P. 56(c). Specifically, the July 13, 1994 offer occurred after the filing of the original complaint onFebruary 15, 1994, and the plaintiff never amended the original complaint to include this allegation nor filed a separate complaint.[2]
ORDER
For the foregoing reasons, it is hereby ORDERED that the motion for summary judgment of the defendant, Arbella Mutual Insurance Company, is ALLOWED. It is further ORDERED that the motion for summary judgment of the plaintiff, Christine Cooke, is DENIED.

Assuming, arguendo, that the plaintiffs motion for summary judgement on Arbella’s July 13, 1994 offer to settle the plaintiffs claim was properly before this court, it is unlikely that the court would grant the motion in the plaintiffs favor because the conditional offer did not constitute an unfair settlement practice in violation of G.L.c. 176D, §3(9)(f) subject to the penalties of G.L.c. 93A. Moreover, pursuant to Mass.R.Civ.P. 56(c), the court would probably grant summary judgment against the plaintiff. Mass.R.Civ.P. 56(c) (”[s]umm-ary judgment, when appropriate, may be rendered against the moving party”); see Vickodil v. Lexington Ins. Co., 412 Mass. 132, 138 (1992).
The Massachusetts Appeals Court has held that “[insistence on a release by an insurer as a condition of payment of the policy limits where liability of its insured is undisputed and damages clearly exceeded the policy limits amounts to an unfair settlement practice in violation of G.L.c. 176D, §3(9)(f).” Thaler v. American Ins. Co., 34 Mass.App.Ct. 639, 643 (1993). Although the parties do not dispute the insured’s liability, Arbella’s conditional offer of $20,000 does not constitute an unfair practice. On July 13, 1994, the plaintiffs damages did not clearly exceed the $20,000 policy limit. Arbella based its assessment of the plaintiffs damages on the medical reports and bills that they had received totalling approximately $5,624. Arbella received no documentation of lost wages. Accordingly, recognizing that the plaintiffs damages did not clearly exceed the $20,000 policy limit, Arbella would be entitled to judgment as a matter of law.