Connolly, J.
This action arises from an automobile accident in which Jacqueline Campitelli (“Campitelli”), an insured of the defendant Metropolitan Property and Casualty Insurance Co. (“Metropolitan”), rear-ended the car operated by the plaintiff, Debra O’Leary Allison (“Allison”). The underlying tort action was tried in District Court, appealed and ultimately settled. The plaintiff brought this second action charging that Metropolitan engaged in unfair settlement claims practices in violation of G.L.c. 176D, §3(9) (f) and G.L.c. 93A, §9. A hearing on the merits was held before this Court in April and May of 1996. Upon review of the testimony and evidence before it, this Court makes the following findings of fact, rulings of law, and orders that judgment enter in favor of defendant Metropolitan.
FINDINGS OF FACT
1.On December 1, 1989, an automobile operated by Campitelli collided with the rear of a motor vehicle operated by the plaintiff Allison. The plaintiff had been stopped at a red light on Grand Street in Braintree, Massachusetts when Campitelli struck her from behind at approximately ten to fifteen miles per hour.
2. At the time of the accident, Campitelli was insured up to $100,000 by the defendant Metropolitan. Metropolitan is engaged in the business of insurance, as that term is defined by G.L.c. 176D.
3. The plaintiff did not manifest any immediately obvious signs of injury or complain of any pain or discomfort at the scene of the accident.
4. Approximately three hours after the accident, the plaintiff went to the Emergency Room of South Shore Hospital in Weymouth, Massachusetts, complaining of neck and back pain.
5. From that time to the present, the plaintiff has been examined and treated by a number of medical professionals for back and neck pain and later, for pain in her right shoulder. By August 15, 1990, the plaintiff had stopped working in her job as a secretary.
6. Metropolitan was notified of the accident by Campitelli on January 8, 1990, and on January 24, 1990 was advised that the plaintiff was represented by the Law Offices of Albert E. Grady with regard to the accident. In November 1991, the plaintiff filed a tort action against Campitelli in Quincy District Court, seeking damages of “less than $25,000.” Metropolitan assumed Campitelli’s defense.
7. Through their attorneys, the plaintiff and Metropolitan engaged in settlement negotiations. Metropolitan never seriously contested that the plaintiff was in any way to blame for the accident and by March 5, 1991, Metropolitan had determined that Campitelli’s liability for the accident was 100%. What remained disputed, however, was to what extent the plaintiff had been injured in the accident.
8. The plaintiff forwarded Metropolitan the reports of the physicians that had treated or were treating her. The reports documented the plaintiffs complaints of persistent back, neck and shoulder pain. The nature of the back pain caused at least one of the treating physicians to note “a possible L5 SI disc bulge.”
9. A magnetic resonance imaging (MRI) scan, the preferred test for diagnosing a bulging disc, was performed on the plaintiffs lower back on August 6,1990, and reported a “minimal diffuse disc bulge noted at L5-S1.” All other disc levels were described as “unremarkable.” The MRI ruled out the possibility that the plaintiff suffered from other back ailments including disc herniation or spinal stenosis.
10. Metropolitan had the plaintiff examined by an Independent Medical Examiner, Chiropractor Allan R. Steingisser, on September 25, 1990. By letter dated September 25, 1990, Dr. Steingisser reported that the plaintiffs complaints of pain were “not confirmed by orthopedic testing” and that “no disability is present at this time.” Dr. Steingisser concluded that he found “no evidence to support treatment of any kind,” noting *332 in particular that “continued chiropractic care is no longer substantiated.”
11. Metropolitan received reports from Chiropractor Mark S. Klezmer, from whom the plaintiff received hundreds of chiropractic treatments. By letter dated October 20, 1992, Dr. Klezmer reported that as a result of Lhe plaintiffs lower back pain, the plaintiff suffered from “30 percent permanent impairment of the whole person.”
12. Metropolitan received several letters from Dr. Harold F. Goodman, an orthopedic surgeon who examined the plaintiff on numerous occasions. Dr. Goodman’s initial reports, dated September 23, 1992 and October 30, 1992, noted pain and impairment of mobility in the plaintiffs neck, lower back, and shoulder.
13. Dr. Goodman’s October 30, 1992 letter indicated thathe had studied the August. 6, 1990 MRI and noted that it “showed no evidence of focal disc herniation, spinal stenosis or other abnormality.” Contrary to Lhe report of the treating physician at the MRI, Dr. Goodman did not indicate the presence of a disc bulge.
14. Dr. Goodman’s final report, dated February 3, 1993 after an examination on January 12, 1993, remarked that the plaintiffs condition had improved, found that a full range of mobility had been restored in plaintiffs neck, back and shoulder, and described those areas as generally “normal.” Dr. Goodman noted that the plaintiff still could not do repetitive movements of the neck and back or lift in excess of 25 pounds. Dr. Goodman’s described his impression of the plaintiffs condition as “[r]esidual neck and back sLrain with traumatic bursitis of the right shoulder.” Dr. Goodman remarked that the plaintiff “may have some psot-traumatic [sic] arthritic changes in the future.”
15. Other examinations and tests, including x-rays, CT scan and arthrogram, were performed on the plaintiffs back, neck and shoulder to find a physical cause for the plaintiffs discomfort. Although extensive, these tests showed no abnormalities.
16. Throughout this time, the parties continued to debate the issue of damages. In June 1991, the plaintiff demanded $70,000 in damages, while Metropolitan offered $9000. In response to additional information provided by the plaintiff over the following months, Metropolitan offered settlement amounts of $9500, $11,500 and $15,650. The plaintiff rejected each of these offers and refused to lower her initial demand.
17. By letter dated February 26, 1993, the plaintiff, through counsel, increased her demand to $75,000. This letter listed $8,662 in medical expenses and $4,484 in lost earning capacity. The remainder of the $75,000 demand was apparently based on Dr. Klezmer’s finding of 30% permanent disability, Dr. Goodman’s diagnosis of chronic neck and back strain, bursitis of the right shoulder and possible post-traumatic arthritic changes, and the fact that the plaintiff faced these conditions at the young age of 26 years old.
18. Counsel for Metropolitan, Attorney Douglas L. Fox, examined the record to date and by letter dated April 20, 1993, advised Metropolitan to make a settlement offer “in the $20-25,000 range.” Attorney Fox noted that the low impact of the accident made it unlikely that the collision caused any serious injury and the conflicting evidence with respect to damages provided by Drs. Steingisser and Goodman. On the other hand, Attorney Fox warned of the risks of going to trial because of his belief that District Courts were plaintiff-friendly and prone to give exorbitant awards. Weighing these factors, Attorney Fox stated that if the plaintiff established causation and injury at trial, he expected “a reasonable finding in the $30-40,000 range” but warned that ”[i]t would not be surprising ... to see a $50-60,000 finding given that we are in the District Court.” Attorney Fox’s analysis, while ultimately erroneous, was reasonable.
19. By letter dated August 24, 1993, with knowledge of all the facts stated above, Metropolitan made a settlement offer of $20,000, which the plaintiff refused.
20. Metropolitan’s internal Activity Log showed that it refused to thereafter increase its $20,000 offer until the plaintiff reduced her demand to a more realistic amount, i.e. below $70,000.
21. Trial on the tort action took place on December 23, 1993 in Quincy District Court (Hurley, J.). On February 7, 1994, the District Court found for the plaintiff, awarding damages in the amount of $125,000 plus interest. The judgment was reduced by PIP benefits of $8000 to $117,000, which, with interest and costs resulted in a total judgment of $151,028.55.
22. Metropolitan, on behalf of Campitelli, challenged the damages award through an appeal to the Appellate Division of the District Court, and also sought removal of the case to Superior Court for a new trial by jury.
23. By letter dated February 14, 1994, plaintiff through her attorney sent Metropolitan a G.L.c. 93A demand letter. By letter dated March 10, 1994, Metropolitan responded, denying any unfair or deceptive acts and making no offer of settlement.
24. In June 1994, Metropolitan gave Attorney Fox authority to offer up to $60,000 to settle the tort action. Attorney Fox offered $50,000 and the plaintiff rejected the offer.
25. On August 3, 1994, the plaintiff filed the instant G.L.c. 93A action against Metropolitan.
26. By letter dated November 11, 1994, Attorney Fox reported to Metropolitan his opinion regarding the likely outcome of a trial de novo of the tort action in Superior Court. Attorney Fox stated that “it is reasonable to project a probable j ury finding of approximately *333 $50,000.00, which is still a generous award in light of the objective evidence.”
27. The parties argued the appeal of the tort action before the Appellate Division of the District Court on December 15, 1994. The case was settled before the Appellate Court could issue a decision.
28. In January 1995, an Agreement for Judgment Satisfied with regard to the original tort action was filed with the Court in the amount of the policy limit, $100,000. In exchange, the plaintiff executed a release of Campitelli from further liability.
RULINGS OF LAW
1. General Laws c. 93A, §9 provides: “(1) . . . [A]ny person whose rights are affected by another person violating the provisions of clause (9) of section three of chapter one hundred and seventy-six C may bring in action in superior court . . . for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper.”
2. General Laws c. 176D, §3 provides: “The following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance:— ... (9) Unfair claim settlement practices [which] shall consist of any of the following acts or omissions: .. . (i) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.”
3. The legal issue presented is whether Metropolitan failed to effectuate a prompt, fair and equitable settlement of a claim in which liability had become reasonably clear, thereby engaging in an unfair settlement practice as defined by G.L.c. 176D, §3(9)(f).
4. “An absence of good faith and the presence of extortionate tactics generally characterize the basis for a c. 93A-176D action based on unfair settlement practice." Guity v. Commerce Ins. Co., 36 Mass.App.Ct. 339, 344 (1994).
5. “Whether the defendant’s settlement proposal was an unreasonable refusal or made in bad faith was a question of fact. The defendants bore the burden of proving that their settlement offer was reasonable and made in good faith in light of the demand and attendant circumstances. This determination required proof that the defendants did not act deliberately to derail the settlement process. Otherwise stated, a wrongdoer ‘ought not wear out the claimant by unduly delaying settlement,’ when liability, including causation and damages, is clear or highly likely.” Parker v. D’Avolio, 40 Mass.App.Ct. 394, 395-96 (1996) (citations omitted).
6. “Bad faith may be either subjective or objective. Subjective bad faith may be established by direct evidence that a defendantwas ‘motivated by subjective bad faith’ even where, ‘on an objective standard of reasonableness,’ he ‘would have been warranted in not settling the case.’ Objective bad faith may be found where a potential defendant offers ‘much less than a case is worth in a situation where liability is either clear or highly unlikely.’ ” Id. at 396 (citations omitted).
7. A good faith reasonable position by an insurer, even if incorrect, is not a G.L.c. 93A-C. 176D violation. Peckham v. Continental Casualty, 895 F.2d 830, 833 (1st Cir. 1990). An insurer is not held to standards of omniscience or perfection; it has leeway to use and should consistently employ its honest business judgment. Id. at 835.
8. In Forcucci v. United States Fidelity & Guaranty Co., 11 F.3d 1 (1st Cir. 1993), an offer of $25,000 was found to be on the low side, but not unreasonable as a matter of law. The court said: “Negotiating a settlement, particularly when the damages are unliqui-dated, is, to an extent, a legitimate bargaining process. The statute does not call for defendant’s final offer, but only one within the scope of reasonableness . . . The reasonableness of a defendant’s response is to be considered in light of the situation as a whole, one aspect of which was the size of plaintiffs demand. Plaintiffs demand was very high. Ordinary give and take would suggest that both would and should move.”
9. For the reasons stated below, Metropolitan’s offers of settlements prior to the trial of the tort action and its decision to appeal the decision of the trial court, were not unreasonable.
A. Pretrial Settlement Negotiations
10. Here, neither Campitelli’s full responsibility for the accident nor the existence of some injury to the plaintiff were seriously disputed. The main point of contention throughout the pretrial settlement negotiations centered on the extent of the plaintiffs injuries and whether they warranted the $70,000 demanded, or whether Metropolitan’s settlement offer of $20,000 was more in line with the facts.
11. When the plaintiff increased her demand for damages to $75,000 in her February 26, 1993 letter, she provided Metropolitan with records showing only $13,146 in actual medical costs and wages lost. Thus, any damages beyond such actual costs could have been based only on the claimed 30% permanent disability and the possibility of the onset of post-traumatic arthritis in the future.
12. The primary evidence of serious injury was the plaintiffs’ persistent complaints of back, neck and shoulder pain, which were amply documented in the records of the physicians who treated her. However, an insurer is not required to unquestioningly accept mere complaints of pain, but may seek evidence of some physical condition which would corroborate and account for such complaints of pain. Here, the September 25, 1990 report of an Independent Medical Examiner, Dr. Steingisser, found no physical condition warranting treatment of any kind. Other medical reports submitted to Metropolitan generally showed the absence of any abnormalities to cause the plaintiffs *334 purported pain. Finally, the low impact of the collision, the fact that the plaintiff did not indicate any injury or pain at the scene of the accident and the plaintiffs ability to continue working months after the accident gave Metropolitan reason to be skeptical of the plaintiffs claims of serious pain and injury.
13. Admittedly, there was some medical evidence of injury to the plaintiff, but this evidence was equivocal. For example, the “disc bulge” identified by the treating physician in the August 20, 1990 was described as '‘minimal” and even that observation was contradicted by Dr. Goodman who reviewed the MRI in October 1992 and reported no abnormalities. Dr. Klezmer’s conclusion of 30% permanent, disability was based on an examination which took place months before the improvement observed by Dr. Goodman and reported in his letter of February 3, 1993. In that report, Dr. Goodman stated that the full range of mobility had been restored in the plaintiffs neck, back and shoulder and described those areas as generally “normal.” Even with the improvements, however, Dr. Goodman concluded that the plaintiff still suffered from “(r]es-idual neck and back strain with traumatic bursitis of the right shoulder” and “may have some psot-trau-matic [sic] arthritic changes in the future.”
14. Where, as here, the plaintiff documented only $13,146 in actual damages and claimed less than $25,000 in its tort action against the insured, and where the medical records of permanently disabling personal injuries were equivocal, Metropolitan acted reasonably in refusing to pay the plaintiffs $75,000 demand and offering $20,000 instead. Having made an objectively reasonable settlement offer, Metropolitan’s decision to hold firm until the plaintiff showed a willingness to compromise, i.e. lower her demand to an amount less than $70,000, was consistent with good faith business judgment.
15. That the District Court awarded damages for the plaintiff far in excess of Metropolitan’s last settlement offer does not change this Court’s conclusion. The determination of the reasonableness of an insurer’s settlement offer must “focus on the attendant facts and circumstances as they existed at the time of the demand,” and the insurer’s “bad judgment” in predicting the ultimate damages award does not constitute “bad faith.” Parker, supra at 402 (no c. 93A-176D violation where insurer offered $25 and jury subsequently returned an award of $1.25 million) .
B. Appeal and Post-Trial Negotiations
16. Metropolitan’s decision to appeal the District Court decision and its conduct in subsequent negotiations were also within the scope of reasonableness.
17. Relying on Thaler v. The American Ins. Co., 34 Mass.App.Ct. 639 (1993), the plaintiff contends that G.L.c. 176D, §3(9)(f) obligated Metropolitan to pay up to its policy limit of $100,000 as soon the District Court issued its damage award of $125,000. In determining the scope of the insurer’s obligation under G.L.c. 176D, §3(9)(f), “the understanding or expectations of an objectively reasonable insured can be considered . . . Ordinarily, because the payment of policy limits to a claimant removes a potential incentive for a claimant to settle with an insured, an insured arguably might expect that an insurer’s covenant of good faith and fair dealing would require the insurer to obtain a release before paying the limits of the coverage purchased.” Id. at 642. In Thaler, the Court held that an objectively reasonable insured would not have such an expectation “where the liability of the insured is undisputed and the insurer has determined that damages clearly exceed the policy limits.” In such a situation, therefore, the insurer’s insistence on a release of the insured where the insured clearly faced personal liability beyond the policy limits amounted to a violation of its duty under G.L.c. 176D, §3(9)(f).
19. The plaintiff attempts to analogize the instant case to Thaler by equating the District Court award of damages with definitive proof that “damages clearly exceed the policy limits.” Since liability in this case is also clear, the plaintiff argues that Thaler precludes Metropolitan from acting to protect its insured from personal liability, i.e. appealing the award of damages. This Court disagrees. By equating the trial court’s damages award to proof of damages clearly exceeding policy limits, the plaintiff ignores the fact that an insurer can reasonably believe that a trial court’s award of damages is excessive and may, after consideration of the District Court decision and all other attendant circumstances, make an honest business judgment that an appeal is appropriate.
20. Here, the District Court award of $ 125,000 was far beyond any amount that the parties had discussed prior to trial. Metropolitan was therefore reasonable in believing that the award had been excessive and that a de novo jury trial in Superior Court would result in a significant reduction of the damages. In contrast to Thaler, an objectively reasonable insured in these circumstances would expect the insurer to use available avenues of appeal to reduce the apparently excessive damages award, at least to the policy limits. Metropolitan’s internal records show that this was its goal. Accordingly, Metropolitan acted reasonably in appealing the decision of the District Court.
21. Relying on Williams v. Gulf Ins. Co., 39 Mass.App.Ct. 339 (1994), the plaintiff also argues that Metropolitan acted unfairly in failing to include a settlement offer increasing its last offer of $20,000 in its response to the plaintiffs posttrial G.L.c. 93Aletter. This argument is without merit. Williams merely provides that an insurer who fails to make a reasonable settlement offer in its response to a G.L.c. 93A demand and who is subsequently found to have acted unfairly, loses the protection from multiple damages provided by G.L.c. 93A, §9(3). Id. at 437.[1] Simply failing to include a settlement offer in the response does not *335 itself constitute an unfair or deceptive act. Where, as here, there is no basis for finding a violation of G.L.c. 93A, Williams is inapposite.
22. Finally, plaintiff contends that Metropolitan’s offer of $50,000 after the District Court award of $125,000 was so insufficient as to be unfair and deceptive. To the contrary, Metropolitan’s initial posttrial offer was reasonably within the scope of the legitimate bargaining process. Metropolitan had a good faith basis • for believing that the award was excessive and that $50,000 was in line with the amount of damages to which the plaintiff was truly entitled. Moreover, Metropolitan’s ultimate goal was to prevent personal liability of its insured by keeping the damages below $100,000. It was reasonable therefore for Metropolitan not to offer $ 100,000 immediately but rather to leave itself “bargaining space’’ with the expectation that compromise by both sides would result in a final settlement at or near $100,000, as so happened in this case. See Forcucci, supra.
23. In sum, there is no objective or subjective basis for finding any G.L.c. 93A-176D violation on the part of Metropolitan. Rather, Metropolitan acted fairly and reasonably in its pretrial offers to the plaintiff, in appealing the apparently excessive damage award, and in its conduct of posttrial negotiations to prevent personal liability to its insured. Accordingly, judgment is ordered in favor of the defendant Metropolitan.
ORDER
For the foregoing reasons, it is hereby ORDERED that judgment enter in favor of the defendant, Metropolitan Property and Casualty Insurance Co.

General Laws c. 93A, §9(3), provides that one who receives a demand letter may, within thirty days, make “a written tender of settlement,” which, if reasonable, and if rejected by the claimant, will limit any subsequent recovery to the relief tendered. Id. at 437.