MONICA STRAUSS & others[1] vs. TEACHERS INSURANCE
AND ANNUITY ASSOCIATION OF AMERICA
(and a companion case[2]).

No. 93-P-624.

Middlesex. May 17, 1994. - September 29, 1994.

Present: ARMSTRONG, KASS, & JACOBS, JJ.

*Practice, Civil,* Judgment notwithstanding verdict, Instructions to jury. *Annuity. Insurance,* Life insurance: change of beneficiary. *Evidence,* State of mind, Competency.

At the trial of a civil action, sufficient evidence was presented for the jury to conclude that the owner of an annuity contract fully complied with such notice requirements as would satisfy a reasonable insurer under the terms of the contract so as to effect a change of beneficiary; moreover, the evidence was sufficient for the jury to conclude, in any event, that there was substantial compliance with the change of beneficiary provisions of the contract. [360-363]

No error appeared on the record of the trial of a civil action such as would warrant granting appellate relief to the nonprevailing party. [363]

CIVIL ACTION commenced in the Superior Court Department on March 14, 1988.

The case was tried before *J. Owen Todd,* J.

*Lillian J. LaRosa* for Gloria Strauss.

*John F. Palmer* for Monica Strauss & others.

ARMSTRONG, J. Gloria Strauss, the divorced wife of the decedent, Dr. Elliott W. Strauss, appeals from a judgment holding that the individual plaintiffs, the children of his first

___

[1]William M. Strauss, individually and as executor of the estate of Elliott W. Strauss, and Nicholas Strauss.

[2]Teachers Insurance and Annuity Association of America vs. Gloria Strauss. Gloria Strauss is named as a defendant in the cross claim of the Teachers Insurance and Annuity Association of America (TIAA) and is plaintiff in counterclaim against the original plaintiffs and in cross claim against TIAA.

wife, were entitled to the proceeds of a lifetime annuity contract that guaranteed benefits for a twenty-year period. Gloria was the original named beneficiary; the question is whether Dr. Strauss effectively changed that designation in his lifetime.

The case was tried to a jury, which heard evidence to this effect. Dr. Strauss, a resident of Cambridge, was a physician and for seventeen years a biomedical researcher on the faculty of Brown University. He was widowed in July, 1983. Just prior to his retirement in the fall of 1984, he married Gloria, whom he had met earlier that year.

During his working years Dr. Strauss had purchased three deferred annuity contracts (i.e., contracts for monthly payments to commence at a future date) with the Teachers Insurance and Annuity Association of America (TIAA). At the time of his retirement, he converted two of the deferred annuity contracts to a single contract, with monthly payments to start immediately. This contract, numbered IB-89574-7, referred to by the parties as the "immediate" annuity, is the contract at issue here. Both the immediate annuity contract and the remaining deferred annuity contract, numbered B-398098-0, reserved to Dr. Strauss the right to change the beneficiaries at any time, "by written notice satisfactory to TIAA sent to its home office in New York, NY."

Dr. Strauss's marriage to Gloria soon broke down; they were divorced in 1986, and their (surviving) separation agreement was incorporated in the judgment nisi, which entered on July 21, 1986. Although the separation agreement contained provisions that waived any claim by one spouse against the other's estate and purported to divide all of the tangible property owned by the couple, no provision addressed the interest that Gloria held at the time of the divorce as beneficiary of the two annuity contracts.

Within weeks of the divorce, Dr. Strauss was diagnosed with metastatic rectal cancer, for which he underwent sur-

gery on October 10, 1986.[3] In mid-December, he contacted TIAA regarding the beneficiary designations for the two annuities. On December 31, 1986, TIAA mailed him copies of the current designations, and a blank change of beneficiary form showing the number of the deferred annuity policy (B-398098-0).[4] The accompanying letter, which bore in its heading the numbers of both policies, stated: "If you wish to change your beneficiary, we are enclosing a form for your use. Just enter the designation you wish, then date, sign and return the form to us." In a postscript, the letter added: "If you wish to change your beneficiary under Contract No. IB89574-7, please let us know whom you wish to designate as beneficiary(ies) so that we may prepare the appropriate form."

Dr. Strauss immediately filled out and signed the change of beneficiary form, naming his three children as primary beneficiaries. He returned the form along with a handwritten letter, dated January 2, 1987, which explained: "I have used your form to change my beneficiaries. I designated each of my children as beneficiaries (thereby *deleting* my *former wife*.) I want my children to be the only beneficiaries for *each of the contracts* I have with TIAA . . ." (emphasis original). The letter referred to both contracts by their policy numbers. TIAA responded with a letter dated January 26, 1987, confirming the change of beneficiary on the deferred annuity contract and enclosing a change of beneficiary form, filled out with the children's names, for the immediate annuity contract. Dr. Strauss never read or responded to this letter. TIAA sent another letter dated September 1, 1987, noting that Dr. Strauss had not responded to the January 26 letter, and stating: "If we don't hear from you soon, we will assume that you have decided to withdraw your request [to change the beneficiary on the immediate annuity]." During

---

[3]The hospital records indicate that Dr. Strauss suffered from clinical depression at the time of his discharge in mid-October. He had been taking Nardil, an antidepressant, for several years.

[4]TIAA's internal procedures apparently did not permit a blank form to be sent with regard to the immediate annuity policy.

this period, Dr. Strauss's cancer had recurred. He was hospitalized several times, undergoing a second surgery on March 14, 1987, and chemotherapy in April and May. He was admitted to the Dana Farber Cancer Institute, for pain control, for three days in August, and then again from September 16 until his death on October 30, 1987. After Dr. Strauss's death, his son William discovered both letters from TIAA, unopened, among piles of unopened mail in Dr. Strauss's house.

The judge submitted the case to the jury on special questions. The jury responded that Dr. Strauss intended to change the beneficiary designation on the immediate annuity to provide benefits to his children, that he had informed TIAA of that intent, and that he had substantially complied with the provisions of the annuity contract.[5] Based upon this special verdict, the court ordered judgment for the plaintiffs in the amount due on the immediate annuity policy. Gloria's motion for judgment notwithstanding the verdict was denied.

1. *Judgment notwithstanding the verdict.* Gloria contends that she was entitled to judgment n.o.v. because the plaintiffs failed to introduce sufficient evidence that Dr. Strauss had substantially complied with change of beneficiary provisions of the annuity contract. We consider whether "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff[s]" on this issue. *Walsh* v. *Chestnut Hill Bank & Trust Co.*, 414 Mass. 283, 290-291 (1993), quoting from *Dobos* v. *Driscoll*, 404 Mass. 634, 656, cert. denied, 493 U.S. 850 (1989).

"The interest of the beneficiary or beneficiaries in [an annuity] of the character issued to [Dr. Strauss] is a qualified vested interest, which is subject to be divested and defeated should the [holder] in his lifetime exercise the power given him to change a beneficiary in the manner prescribed by the contract." *Kochanek* v. *Prudential Ins. Co.*, 262 Mass. 174,

---

[5]The jury also responded that Dr. Strauss did not change his mind about designating his children as beneficiaries after he notified TIAA of the change.

177 (1928). "A mere intention . . . to change the beneficiary not acted upon in the manner required by the terms of the policy is ineffectual." *Henderson* v. *Adams*, 308 Mass. 333, 338 (1941). But if the policyholder substantially complies with the policy requirements regarding the change of beneficiary, exact compliance will be excused. See *ibid.*; *Acacia Mut. Life Ins. Co.* v. *Feinberg*, 318 Mass. 246, 249-250 (1945).

In this case the only requirement of the policy relating to a change of beneficiary was that the person making the change provide "written notice satisfactory to TIAA sent to its home office." The policy did not require any particular formalities in order for the holder to effect a change of beneficiary. It made no reference to and did not incorporate any internal procedures of TIAA relating to change of beneficiary. This is in contrast to the *Kochanek, Henderson,* and *Acacia Mut. Life Ins.* cases, *supra,* where the policies at issue specified that no change in beneficiary could be effective until the insurance certificates were submitted for endorsement by the insurer with the name of the new beneficiary. Contrast also *Resnek* v. *Mutual Life Ins. Co.*, 286 Mass. 305, 308 (1934), where the policy made a change of beneficiary ineffective until the notice and the policy were filed at the company's home office. The jury could have found that TIAA was satisfied with the *notice* provided it by Dr. Strauss (as opposed to being satisfied, for its own recordkeeping purposes, with the *form* he sent) based on the company's response. TIAA's letter of January 26, 1987, stated that it was "glad to make the requested change in beneficiary," and that Dr. Strauss need only date and sign the enclosed form and return it in the enclosed postage paid envelope.

Moreover, the annuity contract, properly read, required only such notice as would satisfy a reasonable insurer in TIAA's position. "When it is a condition of an obligor's duty that he be satisfied with respect to the obligee's performance . . . and it is practicable to determine whether a reasonable person in the position of the obligor would be satisfied, an interpretation is preferred under which the condition occurs

if such a reasonable person in the position of the obligor would be satisfied." Restatement (Second) of Contracts § 228 (1981). See *Rooney* v. *Weeks*, 290 Mass. 18, 27 (1935), and cases cited; *Fall River Line Pier, Inc.* v. *New York, N.H. & H.R.R.*, 344 Mass. 179, 185 (1962). The jury could have concluded that Dr. Strauss's notice, complete as it was with all the information required by the company, and signed with all the formality normally required even by TIAA's internal procedures, would be satisfactory to a reasonable insurer under these circumstances. Compare *Rowen* v. *Kiewlicz*, 4 Mass. App. Ct. 784 (1976) (where insured filled out a change of beneficiary form without properly indicating policy numbers in the appropriate blank, the evidence supported a finding of compliance with the policy requirements).

Finally, in addition to the evidence of full compliance with the contractual requirements, there was sufficient evidence for the jury to find substantial compliance. Gloria focuses on language in some decisions to the effect that to comply substantially with policy provisions relating to a change of beneficiary, the policyholder must do "all in his power to effect the change." *Henderson* v. *Adams*, 308 Mass. at 338. This standard, however, is not wholly objective; rather, it "var[ies] with the circumstances of particular cases." *Ibid.* The evidence warranted a finding that Dr. Strauss reasonably believed that the notice he sent was sufficient to effect the change in beneficiary that he desired. He never learned of any dissatisfaction on TIAA's part, and he died assuming there was nothing further for him to do. In the circumstances of this case, where Dr. Strauss notified TIAA of a change of beneficiaries in a manner that satisfied the policy requirements but died before receiving actual notice that further steps were necessary to effect the change, the jury could have found that there was substantial compliance with the policy. Compare *Rowen* v. *Kiewlicz, supra; IDS Life Ins. Co.* v. *Senna*, 9 Mass. App. Ct. 917 (1980) (where policyholder was assisted by agent in filling out change of beneficiary form that was later rejected on technical grounds by insurer, and

policyholder died before being notified of rejection, he had substantially complied as a matter of law).

2. *Other matters.* Gloria's remaining contentions do not warrant extended discussion. (a) The judge properly admitted in evidence various statements allegedly made by Dr. Strauss concerning Gloria's behavior, not to prove her behavior, but to prove his state of mind toward her. See *Custody of Jennifer*, 25 Mass. App. Ct. 241, 243 (1988). Counsel did not request a limiting instruction. See *Schwartz* v. *Goldstein*, 400 Mass. 152, 154 (1987). (b) Whether or not a charge conference was held (the proceedings go off the record at a critical point), as required by Mass.R.Civ.P. 51(b), 365 Mass. 816 (1974), no objection was taken to the omission; the point was waived. *Miller* v. *Boston & Me. Corp.*, 8 Mass. App. Ct. 770, 774 (1979). (c) The state of the evidence required no instruction on the presumption of competence. *Lane* v. *Candura*, 6 Mass. App. Ct. 377, 382 (1978). No suggestion was made that Dr. Strauss had become incapable of rational choice during his final illness. (d) In considering objections to the charge, the judge appears to have agreed to give an augmented instruction concerning "substantial compliance" with the policy requirements. Following discussion of other points, the judge failed to do so. So far as appears, this was an inadvertence. We think it was the duty of counsel to remind him in order to preserve the point. In any event, the judge's instructions on substantial compliance "conveyed the right idea, . . . although one might prefer a more extended statement." *Grassis* v. *Retick*, 25 Mass. App. Ct. 595, 601 (1988) (citation omitted).

*Judgment affirmed.*