Fremont-Smith, J.
In this action, Phoenix Home Life Mutual Insurance Company (“Phoenix”), sued to obtain a declaratory judgment to determine the proper beneficiaries of insurance company proceeds, and Esther R. Brown, the insurer’s widow, filed a counterclaim against Phoenix, asserting that Phoenix’s refusal to pay the insurance proceeds to the Kenneth R. Brown Irrevocable Trust constituted a “willful and knowing” violation of M.G.L.c. 176D and c. 93A. On August 14, 1995, this Court (Graham, J.), allowed defendant’s motion for summary judgment on Court I of the counterclaim, holding that Mr. Brown, before his death, had substantially complied with the policy requirements regarding the change of beneficiary, so that exact compliance would be excused. The Court ordered that Phoenix pay the policy proceeds and interest thereon to the irrevocable trust. On March 4, 1996, this Court (Smith, J.), allowed defendant’s motion for summary judgment on Count III of the counterclaim, finding that Phoenix’s insistence on Brown’s release of all claims as a prerequisite to receipt of the policy proceeds constituted an unfair clam settlement practice in violation of G.L.c. 176D, §3[3] and G.L.c. 93A. The Court in this case cited Thaler v. American Ins. Co., 34 Mass.App.Ct. 639, 643 (1993), for the proposition that “insistence on a release by an insurer as condition of payment of the policy limits where liability of its insured is undisputed . . . amounts to an unfair settlement practice in violation of G.L.c. 176D, §3(9)(f),” id at 643, and concluded that Phoenix’s liability to pay the irrevocable trust was more than reasonably clear, in light of this Court’s previous order in this case granting summary judgment on Count I of the counterclaim. The Court, however, left for trial the question of whether or not Phoenix’s unlawful conduct was “knowing and willful,” so as to have entitled Brown to double or treble damages.
After trial, this Court finds, based on all of the credible evidence, that Phoenix’s failure to promptly pay the insurance proceeds to the irrevocable trust was not “knowing or willful” until after the Court’s August 14, 1995 order. The insurance policy provided that no change of beneficiary would be effective unless in writing and signed by the owner of the policy, and it was undisputed at trial that no change of beneficiary form changing the beneficiary to the trust had ever been signed by the owner of the policy at a time when he owned the policy. There was evident confusion as to who was the legal owner of the policy, and both Phoenix and Brown appear to have been negligent in failing to have the proper forms executed by the proper person, so as to effectuate a legally correct change of beneficiary. Ownership of the policy had been transferred by an “absolute assignment” on June 2, 1983, to KHE Corporation (of which the decedent, Kenneth *341 R. Brown, was the treasurer and a fifty percent stock owner). On January 9, 1993, Kenneth R. Brown executed a “change of owner/account and beneficiary to a trust” form, in which he purported to change the beneficiary to “Kenneth R. Brown Trust of 5/5/89.” Although the later form was recorded by Phoenix on January 15, 1993, it was not given effect because Kenneth R. Brown was not the owner of the policy.[4] On February 2, 1993, Phoenix notified Brown that the change of beneficiary did not apply to the policy in question “as this policy was never transferred out of the corporation.” On April 23, 1993, apparently having been made aware that the company was the owner of the policy, the president of KHE Corporation, Hans G. Edel, executed an “absolute assignment” form on behalf of the corporation, assigning the policy to Kenneth R. Brown. Kenneth R. Brown died on August 5, 1993, however, without having executed a new change of beneficiary form after he had become the owner. Accordingly, Phoenix refused to pay the proceeds to the Kenneth R. Brown irrevocable trust,[5] i.e., to give retroactive effect to his pre-ownership change of beneficiary form. Finally, on May 18, 1993, the corporation executed a change of beneficiary form, naming the trust as beneficiary. At that time, however, the corporation was no longer the owner, having assigned the policy to Brown on April 23, 1993.
When Kenneth R. Brown died on August 5, 1993, the company refused to pay the funds to the trust in question, concerned that if it did so, it might later be subjected to suit for wrongful payment by the beneficiaries or creditors of the estate, or for estate tax liability. Rather, Phoenix insisted upon a release from the widow as executrix of the estate, together with a certification by her that “all necessary” probate court approvals had been obtained.
In light of this convoluted history, it seems clear that it was the intention of both the company and Brown that the policy monies be paid to the trust. In view of the fact that this was never legally accomplished, however, it is not clear that Phoenix was engaging in an unfair or deceptive insurance practice by insisting on a release or probate court approval in these circumstances.
On September 29, 1994, the Appeals Court decided Strauss v. Teachers Insurance & Annuity Assoc. of America, 37 Mass.App.Ct. 357 (1994). In Strauss, the decedent, who owned an annuity contract, had filled out and signed a change of beneficiary form, and returned it with a handwritten letter which explained his intention to change his beneficiaries. The insurer responded with a letter confirming the change of beneficiary on the annuity contract but also enclosing a change of beneficiary form. Strauss never read or responded to it, as his death intervened. Thus, the company’s refusal to pay the annuity to the designated beneficiary was based on a mere technicality, i.e., his failure to indicate his intentions on the company’s prescribed form, rather than merely by letter, as he had done. The jury found that he intended to change the beneficiary designation on the annuity, that he had informed the insurer of his intent, and had substantially complied with the provisions of the annuity contract. The court held that a mere intention to change the beneficiary not acted upon in the manner required by the terms of the policy is ineffectual, but “if the policy holder substantially complies with the policy requirements regarding the change of beneficiary, exact compliance will be excused." Id, 361. The court further pointed out that the evidence warranted a finding that Strauss reasonably believed that the notice he had sent was sufficient to effect the change in beneficiary that he desired, and that he had never learned of any dissatisfaction on the insurer’s part, and had died assuming there was nothing further for him to do. Id, 362.
Here the situation confronting Phoenix was not that clear. Although the intention of Kenneth R. Brown to make the irrevocable trust the beneficiary of the policy had been made clear, there had never been a change of beneficiary form signed by the owner at a time when the signatory owned the policy, other than the assignment of the policy from the corporation to Brown. In these circumstances, Phoenix could have no assurance, absent a release and certification that necessary probate approval had been obtained, that a beneficiary or creditor of the estate, or a tax authority, might not attempt to hold Phoenix liable for illegal payment of the proceeds to the trust. As it happened, however, the estate was, at that time, in what was characterized as a “bitter dispute” with the surviving owner of the corporation with respect to Kenneth R. Brown’s financial interest in the corporation, and counsel for the estate opposed Phoenix’s request to obtain probate approval because this would entail informing the co-owner of the business about the existence of the insurance proceeds payable to the widow, which might in turn have affected the co-owner’s willingness to compromise the probate dispute.[6] When it became evident that defendants did not agree to Phoenix’s proposal, it promptly filed this action, in the nature of inter-pleader, seeking the guidance of the court. The Court concludes that if, in light of Strauss, Phoenix violated G.L.c. 176D and c. 93A by thereafter continuing to delay payment, any such violation, under the circumstances presented to Phoenix at the time, was not knowing or wilful.
However, a different situation was presented to Phoenix when the Court entered summary judgment on Count I of the counterclaim on Aúgust 14, 1995. Although a summary judgment order which disposes of less than all of the claims is interlocutory rather than final, Phoenix had, as of that date, received the judicial declaration and guidance which it had sought, and knew that there would be no appeal of that determination. Phoenix admits it had no stake in who *342 was the recipient of the proceeds, but simply sought judicial guidance, and it certainly knew that the defendants would not appeal that judgment, which they had sought. Yet, Phoenix has continued to refuse, to this very day, to pay the proceeds to the trust.[7]
As noted above, an insurance company’s failure to “effectuate prompt, fair and equitable settlement of claims in which liability has become reasonably clear” constitutes an unfair settlement practice. G.L.c. 176D, §3(9)(f). In light of the Court’s allowance of Count I of the counterclaim, Phoenix’s obligation had not only become “reasonably clear" but, as a practical matter, beyond dispute. Yet, Phoenix has continued to delay and refuse payment of the proceeds to the trust without a release and/or certification of probate approval. As noted by this Court in its “Memorandum of Decision and Order on Plaintiffs-in-Counterclaims’ Motion for Summary Judgment on Count III of the Counterclaim,” in Thaler v. American Ins. Co., 34 Mass.App.Ct. 639, 643 (1993), the Appeals Court held that “insistence on a release by an insurer as condition of payment of the policy limits where liability of its insured is undisputed amounts to an unfair settlement practice ...” As no valid justification for this continued delay and refusal after August 14, 1995, has been presented by Phoenix, the Court can only conclude that, from and after that date, Phoenix’s continued unfair settlement practice was knowing and willful, entitling the counter-claimants to double damages.
The question remains whether, as Phoenix contends, counterclaimants should be awarded only twice the amount of interest on the withheld payment from and after the time it should have been paid or should be awarded two times the withheld principle and interest.
This question has recently been addressed in Kapp v. Arbella Mutual Insurance Company, 426 Mass. 683 (1998). In that case, the Court construed the 1989 amendment to G.L.c. 93A, §9(3) which provided:
For the purposes of this chapter, the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same transaction or occurrence, regardless of the existence or nonexistence of insurance coverage available in payment of the claim.
The Court concluded, at 686:
It is one thing to aggregate multiple awards, as the amendment does. It is another thing to redesign single awards and make these punitive also. Before such a structural change is introduced and enforced by the courts, there ought to be better evidence than we can find of a legislative purpose to encompass it by the terms of the amendment. . . Therefore, in cases such as the one before us, “where there has been no judgment [on the underlying claim], our previous rule remains in effect: base damages are calculated according to the interest lost on the money wrongfully withheld by the insurer, compensating claimants for the cost and expense directly resulting from the insurer’s conduct” (citing Clegg v. Butler, 424 Mass. 413 (1997)).
In Clegg, the Court had held that neither an arbitrator’s award nor a settlement was a judgment, and said . . . “Where there has been no judgment, our previous rule remains in effect: base damages are calculated according to the interest lost on the money wrongfully withheld by the insurer ...” The Court went on to hold that the judge should determine the date when the insurer should have offered its policy limits in order to determine the period of time during which the plaintiff had been wrongfully denied the use of the funds from the insurer.
In the instant case, the counterclaim plaintiffs argue that this court’s allowance of their motion for summary judgment on August 14, 1995 renders this a situation in which the total amount of withheld funds should be multiplied to determine the punitive award. As pointed out in Clegg, supra, however, “the term ‘judgment’ has acquired a peculiar meaning and lore,” and cited “Mass.R.Civ.P. 54(a), 365 Mass. 820 (1974).”
When we turn to the definition of “judgment” in Rule 54, 365 Mass. 820, we find that it means, “the act of the trial court finally adjudicating the rights of the parties affected by the judgment,” i.e., a final judgment terminating the litigation. Here, conversely, the allowance of summary judgment was clearly an interlocutory order. It could not have been made final at that time, in view of the court’s having ordered a further evidentiary hearing to determine whether Phoenix’s conduct was “knowing and wilful” so as to warrant double or treble damages and attorney fees.
Accordingly, the Court concludes that, although Phoenix’s continued withholding of the funds was “knowing and wilful” from and after the date when the Superior Court determined, by way of summary judgment, that the funds should be deposited in the trust, as contended by the counterclaimants, there was, until today, never a “judgment” as construed by the Supreme Judicial Court. Accordingly, the counterclaimants are entitled to a punitive award only with respect to the amount of interest on the withheld funds, from and after the date of the court’s allowance of summary judgment.
In view of the intransigence outlined above displayed by both sides, which continually thwarted any resolution of the dispute, the Court concludes that double rather than treble damages are the appropriate multiplier. The Court, therefore, awards the amount of principal due $254,705.69, plus two times the amount of interest due since the date when the summary judgment ascertained the proper recipient of the funds (August 14, 1995), such interest to be calculated at the statutory rate of 12% per annum on the principal amount then due,[8] or $81,026 doubled to *343 $162,502. Accordingly, judgment is to enter in the sum of $417,207.69, plus attorney fees.
With respect to the amount of reasonable attorney fees to be awarded, counterclaimants’ evidence with regard to such amount is inconsistent. At the initial hearing before another judge of this court, counterclaimants’ counsel submitted an affidavit of their office indicating that counterclaimants’ reasonable attorney fees totaled $9,907.48. At the recent trial, however, counterclaimants’ counsel testified that, at the last minute, he had reviewed all of his billing documentation on this case “until 2:00 a.m.,” and had come out with a much inflated figure. The Court finds that these proceedings have been unduly contentious and overly litigated by both sides, and concludes that the $9,907.48 originally sought is a fair, adequate, and reasonable amount to award for attorney fees in these unusually protracted and unnecessarily convoluted proceedings.
ORDER FOR JUDGMENT
Accordingly, final judgment shall be entered declaring that the beneficiary of the life insurance policy in question is the Kenneth R. Brown Irrevocable Trust and final judgment shall be entered for the counterclaimants on their counterclaim in the principal amount of $254,705.69, doubled interest in the amount of $162,502. and $9,907.48 in attorney fees, for a total judgment in favor of counterclaimant Esther R. Brown, Executrix of the Estate of Kenneth R. Brown and as Trustee of the Kenneth R. Brown Irrevocable Trust against Phoenix Home Life Mutual Insurance Company in the sum of $427,115.17, without further interest or costs.

This makes it an “unfair claims settlement practice” if there is a failure to “effectuate prompt, fair and equitable settlement to the claims in which liability has become reasonable clear.”

A similar form, executed on April 15, 1993, was not recorded as received by Phoenix.

Two other insurance policies, of which Brown was the owner, were paid to the trust.

Although this explanation of defendants’ counsel’s refusal to obtain probate approval was not disputed, it is puzzling in view of the fact that the co-owner of the business must have known of the policy when he executed the assignment to Brown.

It did agree to place the funds, and contractual interest thereon, in an escrow account, but that is not payment to the beneficiary, as had been ordered by the Court. Phoenix admitted at trial, moreover, it has still not authorized payment to the trust, and would not do so until there was a final judgment.

 12% of $254,706 is $30,565 per annum, or $2,547 per month or $84.90 per day. As to the date of this judgment, April 10, 1998, there will be 2 years, 7 months and 27 days of interest due, or $81,251 of interest due.