AETNA CASUALTY & SURETY COMPANY *vs.* MAUREEN M.
SULLIVAN & another.[1]

No. 91-P-1108.

Norfolk. June 10, 1992. - August 6, 1992.

Present: DREBEN, SMITH, & FINE, JJ.

*Insurance*, Motor vehicle insurance, Construction of policy, Defense of
proceedings against insured. *Contract*, Insurance.

Language in the relevant paragraph of a policy of automobile liability in-
surance expressing the insurer's "right and duty to defend any lawsuit"
brought against the insureds for damages which might be payable
under the policy, giving the insurer the option to settle such a lawsuit,
and stating that "[o]ur duty to settle or defend ends when we have paid
the maximum limits of coverage under this policy" created an obliga-
tion on the part of the insurer to defend its insureds that was not satis-
fied merely by the insurer's tendering the full amount of its insurance
coverage without a judgment in a personal injury action against the
insureds and without obtaining a release of the insureds from at least
one personal injury claimant. [155-160]

CIVIL ACTION commenced in the Superior Court Depart-
ment on February 14, 1990.

The case was heard by *J. Harold Flannery*, J., on a mo-
tion for summary judgment.

*Francis M. O'Boy* for the defendants.
*Stephen M. A. Woodworth* for the plaintiff.

FINE, J. While Maureen M. Sullivan was operating a vehi-
cle owned by her husband, Thomas J. Sullivan, on June 11,
1988, an accident occurred as a result of which Brenda A.
Tighe, a passenger, suffered severe injuries. On September
15, 1989, Tighe brought suit against the Sullivans and vari-
ous other parties seeking damages for her injuries. At the
time of the accident, Thomas J. Sullivan carried automobile

---

[1]Thomas J. Sullivan.

liability insurance with Aetna Casualty & Surety Company with coverage of up to $25,000 per person and $50,000 per accident. On February 14, 1990, Aetna filed a declaratory judgment action in the Superior Court against the Sullivans and the other parties to the personal injury action seeking a declaration that, having tendered to Tighe the full amount of insurance coverage, $25,000, Aetna should be discharged from its duty to defend the Sullivans in the personal injury action.

Relying on evidence of its tender and certain language in the insurance policy, Aetna moved for summary judgment. The Sullivans opposed Aetna's motion for summary judgment. They relied on the same policy language and Aetna's failure to obtain a release from Tighe of her claim against them in exchange for the $25,000 tender. The judge allowed the motion, and the Sullivans appealed.

Although the question of an automobile liability insurer's obligation to defend the insured upon tendering the full policy limits to the claimant has been the subject of numerous Superior Court decisions, reaching inconsistent results, and has been the subject of a considerable amount of litigation elsewhere in the country, apparently the question has not previously been decided by an appellate court in Massachusetts.

Since the source of the duty to defend is the contractual agreement, see 7C Appleman, Insurance Law and Practice § 4682, at 16, 27-28 (Berdal ed. 1979), we consider, first, the applicable provision of the insurance policy in effect at the time of the accident. The relevant paragraph, entitled "Our Duty to Defend You and Our Right to Settle," provides as follows:

> "We have the right and duty to defend any lawsuit brought against anyone covered under this policy for damages which might be payable under this policy. We will defend the lawsuit even if it is without merit. We have the right to settle any claim or lawsuit as we see fit. Our duty to settle or defend ends when we have paid the maximum limits of coverage under this policy. If

any person covered under this policy settles a claim without our consent, we will not be bound by that settlement."

Although the relevant provision is not one which was required by statute, see G. L. c. 90, § 34A, it is included in the standard form automobile liability insurance policy for the year in question, which was approved by the Commissioner of Insurance. "Because the [provision] is . . . controlled by the Division of Insurance rather than the individual insurer, the rule of construction resolving ambiguities in a policy against the insurer is inapplicable [citations omitted]. Instead, we must ascertain 'the fair meaning of the language used, as applied to the subject matter' [citations omitted]." *Bilodeau* v. *Lumbermens Mut. Cas. Co.*, 392 Mass. 537, 541 (1984). Of great importance in determining the fair meaning of the language is the reasonable understanding of the average insured as to the scope of the insurer's duty. Compare *Slater* v. *United States Fid. & Guar. Co.*, 379 Mass. 801, 803 (1980); *Jefferson Ins. Co.* v. *Holyoke*, 23 Mass. App. Ct. 472, 476-478 (1987); *Commerce Ins. Co.* v. *Koch*, 25 Mass. App. Ct. 383, 384 (1988).

Aetna contends that the policy language is clear and unequivocal in discharging it from its duty to defend if it tenders or pays the full policy limits to the claimant in a personal injury action against its insured, even if the claimant is unwilling to release the insured from further liability. Such an interpretation makes sense, Aetna argues, because, otherwise, an insurer would be required to expend its funds to defend the personal assets of an insured who could have chosen, and paid for, higher coverage limits. Moreover, Aetna argues, if its interpretation of the language is not adopted, it will be required to incur litigation expenses grossly disproportionate to the premiums paid. Reading the paragraph in the policy as a whole, however, we think the language is not clear and unequivocal, as Aetna contends, and that the fair meaning of the provision is not the one put forward by Aetna.

The title of the provision and the first two sentences make absolutely clear that the insurer has a duty to defend any lawsuit brought against the insured for damages which might be payable under the policy. The right of an insured motorist to have his insurer provide a defense is, unquestionably, of great benefit, and the traditional obligation of an insurer to perform that function in a reasonable manner has long been recognized. See *Abrams* v. *Factory Mut. Liab. Ins. Co.*, 298 Mass. 141, 143 (1937); *Emcasco Ins. Co.* v. *Davis*, 753 F. Supp. 1458, 1460-1461 (W.D. Ark. 1990). The third sentence of the provision gives the insurer the option to settle such a lawsuit. The next sentence is the one on which Aetna relies: "Our duty to settle or defend ends when we have paid the maximum limits of coverage under this policy." A reasonable insured, we think, relying on the clear language of the first three sentences, would assume that the insurer was undertaking a duty either to defend or settle any lawsuit against him related to use of the insured vehicle, and he would understand the reference to payments in the next sentence only to include payments made by an insurer in the course of carrying out its obligations, set forth in the preceding three sentences, either to settle or defend.

Under what we believe to be the fair meaning of the language, in the circumstances, the insurer would be discharged from any further duty to defend if it should make a payment equal to the maximum policy limits either to settle a claim against the insured or in total or partial satisfaction of a judgment against the insured upon conclusion of the litigation. See *Lumbermens Mut. Cas. Co.* v. *McCarthy*, 90 N.H. 320, 324 (1939).[2] For example, in the case of multiple claims against an insured, good faith settlement with one claimant, or payment of all or part of a judgment favoring one claimant, the policy language would have the effect of discharging the insurer from defending additional claims beyond the pol-

[2]Depending upon the reasonable likelihood of success on appeal, the insurer's duty to defend may continue until an appeal has been disposed of. See *Aetna Ins. Co.* v. *Borrell-Bigby Elec. Co.*, 541 So.2d 139, 141 (Fla. Ct. App. 1989); 7C Appleman, Insurance Law and Practice § 4688.

icy limits. See *Johnson* v. *Continental Ins. Cos.*, 202 Cal. App. 3d 477, 485 (1988). The insurer, having exhausted the policy limits *and* provided a defense, the insured could not reasonably expect more. The situation is different, however, when an insurer seeks to pay the full amount of coverage without a judgment and without obtaining a release of the insured from at least one personal injury claimant. Were we to interpret the policy language in that situation as Aetna does, an insurer would be free, regardless of the merits of a personal injury claim, to tender the coverage limits to the claimant and decline to defend further whenever the insurer anticipates that the cost of providing a defense would exceed the amount of coverage. The duty to defend generally relied upon by insured motorists would, thus, be significantly nullified in a large number of cases.

An analysis of decisions from jurisdictions around the country supports our conclusion that Aetna did not satisfy its obligation to defend the Sullivans merely by tendering the full amount of its insurance coverage. Generally, over the years, insurers have been attempting through the use of standard policy language to limit their duty to defend, yet, at the same time, courts increasingly have been interpreting the policy language to protect the right of insured persons to a defense.

Cases raising the issue first began to arise under the pre-1966 version of the standard automobile liability insurance contract. With some variation in the exact terms, those contracts set forth the insurer's duty to defend or to settle claims against the insured without mention of the consequences of exhaustion of the full coverage by tender or otherwise.

The cases in which the issue was the effect of such exhaustion on the insurer's duty to defend were sharply divided. See Annot., Liability Insurer's Duty to Defend Action Against an Insured After Insurer's Full Performance of Its Payment Obligations Under Policy, 27 A.L.R.3d 1057 (1969); Keeton, Ancillary Rights of the Insured Against his Liability Insurer, 13 Vand. L. Rev. 837, 853-856 (1960); Zulkey & Pollard, The Duty to Defend after Exhaustion of Policy Limits, For

the Defense, June 1985, at 21-22. Some courts, viewing the duty to pay the agreed upon coverage as the insurer's primary obligation and the duty to defend as incidental to that obligation, found no duty to defend once the coverage limits were tendered. See, e.g., *Denham* v. *LaSalle-Madison Hotel Co.*, 168 F.2d 576, 584 (7th Cir. 1948). Other courts viewed the duty to defend as an independent obligation and, because the insurer had not reserved the right to withdraw from the defense, ruled that tender of payment of the full coverage did not terminate the obligation to defend. See, e.g., *Kocse* v. *Liberty Mut. Ins. Co.*, 159 N.J. Super. 340, 344-346 (Law Div. 1978).

Around 1966, the standard policies began to include the following clause after setting forth the insurer's duty to defend or settle: "but the company shall not be obligated to pay any claim or judgment or to defend any such [claim] after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements." See Zulkey & Pollard, at 22. Undoubtedly, the change in the policy language was designed to place some limits on an insurer's duty to defend after the policy limits had been exhausted, at least when the insurer had paid a judgment or a settlement. See, e.g., *Johnson* v. *Continental Ins. Cos.*, 202 Cal. App. 3d at 485. Where the policy limits were tendered to a claimant before any judgment or settlement, however, it was held that the duty to defend had not terminated. *Conway* v. *Country Cas. Ins. Co.*, 92 Ill. 2d 388, 395-396 (1982).

A short time later, in an apparent attempt by the insurers to limit the duty to defend further, the standard policy was changed to include the following language: "Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted." See *Brown* v. *Lumbermens Mut. Cas. Co.*, 326 N.C. 387, 389 (1990). The earlier reference to "judgment or settlement" had been dropped. Uniformly, courts construing such policies have ruled that an insurer's tender of the policy limits does not end its duty to defend a claim against its policyholder unless the payment is made after a judgment or settlement. The North Carolina Supreme

Court ruled that the policy language was ambiguous, not with respect to the use of the word "exhausted," but "in the manner by which the coverage must be exhausted before the duty to defend terminates." *Brown* v. *Lumbermens Mut. Cas. Co.*, 326 N.C. at 394. The Court of Appeals of Georgia reached the same result without finding an ambiguity, reasoning that if the duty to defend were to end upon tender of the policy limits, the duty would be "a near nullity." *Anderson* v. *United States Fid. & Guar. Co.*, 177 Ga. App. 520, 521 (1986). See also *Stanley* v. *Cobb*, 624 F. Supp. 536, 537-538 (E.D. Tenn. 1986); *Emcasco Ins. Co.* v. *Davis*, 753 F. Supp. at 1460-1461; *Samply* v. *Integrity Ins. Co.*, 476 So. 2d 79, 83 (Ala. 1985); 7C Appleman, Insurance Law & Practice § 4682, at 37.

The clause involved in these most recent out-of-State cases is nearly identical to the one used in the policy in the instant case, there being no significant difference for our purposes between the word "exhausted" and the word "paid." We are, thus, aware of no case directly in point in which a result was reached contrary to the one we reach. Nor are we aware of any recent out-of-State case in which the general issue of the insurer's duty to defend upon tender of the full coverage was raised and the decision favored the insurer.

Accordingly, we reverse the judgment and order that judgment enter for the defendants.

*So ordered.*