883 P.2d 473

CONTINENTAL CASUALTY COMPANY, an Illinois corporation, Plaintiff/Appellee,

v.

FARMERS INSURANCE COMPANY OF ARIZONA, Defendant/Appellant.

No. 2 CA–CV 94–0222.

Court of Appeals of Arizona, Division 2, Department A.

Oct. 13, 1994.

Gallagher & Kennedy, P.A. by Robert W. Boatman and Leah Pallin, Phoenix, for plaintiff/appellee.

Burrell, Seletos & Tinsley by Ernest D. Tinsley, Phoenix, for defendant/appellant.

## OPINION

FERNANDEZ, Judge.

Appellant Farmers Insurance Company of Arizona appeals from the summary judgment granted in favor of appellee Continental Casualty Company (CNA), awarding pro rata attorney's fees incurred in defending a common insured. The only issue on appeal is whether the trial court erred as a matter of law in finding that Farmers, as the primary insurer, had a duty to defend despite having paid its policy limits and secured a covenant not to execute in favor of its insured. We reverse.

## FACTS

On March 13, 1991, Karl Pohlhaus was the driver of an automobile which collided with a motorcycle driven by John McBryde. Both McBryde and Richard Duncan, a passenger on the motorcycle, were injured and sued Pohlhaus. At the time of the accident, Farmers insured Pohlhaus's automobile with policy limits of $100,000 per person and $300,000 per occurrence. Because Pohlhaus, a minister, was on church business at the time of the accident, he was also insured under the church's policy with CNA which had a $500,000 limit of liability. Both insurance policies were written as primary policies. By operation of law, the Farmers policy was deemed primary and the CNA policy was deemed excess.

1. Farmers did not provide a copy of the complete policy, the relevant policy provision, or the covenants to either the trial court or CNA; however,

After investigating the accident, Farmers concluded that the value of each claim exceeded the $100,000 policy limits. Farmers entered into settlement agreements with both McBryde and Duncan pursuant to which Farmers paid its policy limits and secured covenants not to execute in favor of Pohlhaus. After paying the policy limits, Farmers refused to defend or share defense costs with CNA. Its refusal was premised on a provision of its policy which apparently read as follows:[1] "We will not defend any suit or make additional payments after we have paid the limit of liability for the coverage." Ultimately, CNA settled with McBryde for an additional $457,500 and with Duncan for an additional $42,500.

CNA filed a complaint seeking contribution from Farmers for the attorney's fees and costs CNA incurred in defending the Duncan case. It also sought a declaration that Farmers was obligated to share in the costs of the defense in the McBryde case. Both parties moved for summary judgment. The trial court granted CNA's motion and denied Farmers' motion for reconsideration. This appeal followed.

## DUTY TO DEFEND

■ Farmers' basic argument is that the trial court erred as a matter of law in concluding that it had not discharged its duty to defend its insured and was obligated to pay a pro rata share of the defense costs incurred by CNA. In reviewing summary judgment, our determination of whether the entry of judgment was proper is *de novo*. *United Bank of Arizona v. Allyn*, 167 Ariz. 191, 805 P.2d 1012 (App.1990).

This is a matter of first impression in Arizona. Courts of other jurisdictions have reached varying results on the issue of an insurer's duty to defend upon the exhaustion of policy limits. *See generally* 7C Appleman, Insurance Law and Practice § 4682 at 34 (Berdal ed. 1979); *see also Pareti v. Sentry Indemnity Co.*, 536 So.2d 417 (La.1988), and cases cited therein. Courts construing ex-

CNA does not contend that the policy did not contain the provision and the parties apparently agree there are no disputed facts.

haustion provisions have ruled that an insurer's tender of policy limits does not end its duty to defend absent a judgment or settlement. *See, e.g., Keene Corp. v. Insurance Co. of N. America,* 597 F.Supp. 946, *vacated on other grounds,* 631 F.Supp. 34 (D.D.C. 1985); *Allstate Ins. Co. v. Montgomery Trucking Co. of Ga.,* 328 F.Supp. 415 (N.D.Ga.1971); *Johnson v. Continental Ins. Cos.,* 202 Cal.App.3d 477, 248 Cal.Rptr. 412 (1988).

Other courts have held that a tender of policy limits without a release in favor of the insured is not an actual settlement and therefore exhaustion provisions are ineffective to discharge the duty to defend. *Conway v. Country Cas. Ins. Co.,* 92 Ill.2d 388, 65 Ill. Dec. 934, 442 N.E.2d 245 (1982); *Delaney v. Vardine Paratransit, Inc.,* 132 Misc.2d 397, 504 N.Y.S.2d 70 (1986).

Following oral argument on the cross-motions for summary judgment and argument on the motion for reconsideration, the trial court ruled:

> Defendant maintains that its defense obligation was extinguished when it tendered its policy limits and obtained a covenant not to execute on behalf of its insured, based on the policy language that it would not defend any suit or make additional payments after it paid the limit of liability for coverage.

> Under the fair meaning of the exhaustion clause, an insurer would be discharged from any further duty to defend if it made a payment equal to the maximum policy limits either to settle a claim against the insured or in total or partial satisfaction of a judgment against the insured upon conclusion of litigation. *Aetna Casualty & Surety Co. v. Sullivan,* 33 Mass.App.Ct. 154, 597 N.E.2d 62 (1992). The record is clear that the payment made by Defendant does not fit into either of these categories.

> The cases cited by Defendant to support its contention are not applicable. This is not a case where the Defendant is being asked to defend claims that were pending at the time that it tendered its policy limits. The defense costs at issue were incurred in defending the claim for which Defendant tendered its policy limits. As

stated in the paragraph above, under these circumstances its duty to defend was not extinguished at the time of the tender.

The court's reliance on *Aetna* is misplaced. The court in *Aetna* distinguished cases where "an insurer seeks to pay the full amount of coverage without a judgment and without obtaining a release of the insured from at least one personal injury claimant." 33 Mass.App.Ct. at 158, 597 N.E.2d at 65. *See also Delaney; Conway.* The court in *Aetna* found that the exhaustion clause was ineffective and did not discharge Aetna's duty to defend because in settlement, it failed to obtain a release from the claimant against the insured in exchange for the tendered policy limits. Further, in *Aetna,* there was no secondary or excess insurance.

CNA contends that the equitable subrogation rule as stated in *National Indemnity Company v. St. Paul Insurance Company,* 150 Ariz. 458, 724 P.2d 544 (1986), was correctly applied by the court in this case.

> Under the principle of equitable subrogation, the insurer which has performed the duty to provide a defense to its insured should be able to compel contribution for a share of the cost of defense from another insurer who had a similar obligation to the same insured but failed to perform it.

*Id.* at 459, 724 P.2d at 545. However, *National Indemnity Company* does not address the issue of whether a settling insurer remains obligated to defend.

CNA's reliance on *Columbia Casualty Co. v. United States Fidelity & Guar. Co.,* 178 Ariz. 104, 870 P.2d 1200 (App.1994), is also misplaced. There, the primary carrier, USF & G, considered itself to have paid its policy limits and therefore withdrew from the insured's defense without obtaining any protection for the insured. Columbia Casualty, a true excess carrier, took over the defense and negotiated a settlement. Columbia then sought reimbursement of its defense costs from USF & G. This court ruled that a pro rata reimbursement was proper under those circumstances. The facts in *Columbia* are distinguishable from those in the present case. In *Columbia,* the primary insurer undertook defense of the case and brought an

unsuccessful third-party action. The prevailing third party then obtained an attorney's fee award against the primary insurer. The primary insurer then tendered the defense to the excess carrier, contending that payment of the attorney's fees and other amounts consumed the policy limits. At that time, neither a covenant not to execute nor a release had been obtained for the insured.

■ In this case, the record is clear that Farmers had paid its policy limits and had complied with its duty to defend its insured by obtaining a covenant not to execute on his behalf. Although not a complete release, in view of the existence of excess coverage, it was as complete as Farmers could obtain under the circumstances. The equitable subrogation rule stated by the court in *National Indemnity* and the apportionment of costs

rule stated by the court in *Columbia* remain viable in Arizona. However, under the facts in the present case, Farmers' duty to defend was discharged pursuant to its policy provision and therefore CNA had no right of subrogation for defense costs. Accordingly, we reverse the judgment and remand with directions to enter judgment in favor of Farmers.

LIVERMORE, P.J., and LACAGNINA, J., concur.