Gershengorn, J.
Plaintiff, Medical Professional Mutual Insurance Company, is moving for summary judgment on its complaint for a declaration that it has no obligation to fund an appeal on behalf of its insured, Madeleine Loan, R.N. Madeleine Loan was insured under a Medical Professional Mutual Insurance policy issued to her employer, Newton Wellesley Hospital. Plaintiff contends that having exhausted its Policy limits, it has no further duty to defend Madeleine Loan. In its cross motion for summary judgment, defendants, Newton Wellesley Hospital and Madeleine Loan, allege that the policy language at issue supports an ongoing duty to defend. Specifically, defendants allege that the tendering of the policy limit does not terminate plaintiffs duty to defend, and therefore that plaintiff must fund the appeal that its counsel has filed on behalf of Madeleine Loan. For the reasons set forth below, plaintiffs motion is DENIED. This Court takes no action on defendants’ motion.
*115 BACKGROUND
Newton Wellesley Hospital (the “Hospital”) purchased from plaintiff Medical Professional Mutual Insurance Company (“ProMutual”)[1] a claims-made professional liability insurance policy, number MK1655, effective from January 13, 1994 through January 13, 1995 (the “Policy”).
The Policy provides liability coverage for:
damages because of any claim or claims made against the insured during the policy period arising out of the rendering of or failure to render . . . professional services . . .
The policy also provides that:
The company shall have the right and duty to defend any suit against an insured seeking such damages . . . , but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company’s liability has been exhausted by the payment of judgments or settlements.
Endorsement #2 to the Policy amends the Policy by adding as “Persons Insured” under the Policy “any authorized volunteer worker or employee of the named insured (except interns, externs, residents, dental, osteopathic or medical doctors).” The Policy therefore provides coverage to the Hospital’s employed nurses. The Policy has a $2,000,000 liability limit per claim.
In April 1994, Devin Lucas and Stacy Lucas (“the Lucases”), individually and as next friend of Krista Lucas (“Krista”) and Jared Lucas (“Jared”), filed a complaint against Dr. Louisa Stigol, M.D. (the “doctor”), Madeleine Love, R.N.[2] (“Nurse Loan”), Jane Doe A, Jane Does 1-10, and the Hospital (collectively the “Lucas action”) alleging, among other things, that Nurse Loan failed to exercise reasonable skill in her care and treatment of Krista, who was born at the Hospital.
Pursuant to the Policy, ProMutual retained counsel to defend Nurse Loan and the Hospital in the Lucas action. Before trial, the Hospital was dismissed from the Lucas action by stipulation of the parties. The Lucases’ claims against Nurse Loan were tried to a jury. On or about February 11, 1998, the jury rendered a verdict against Nurse Loan in an amount in excess of the $2,000,000 per claim Policy limit and on or about February 25, 1998, judgment entered against Nurse Loan. Defense counsel moved for a new trial and for judgment notwithstanding the verdict, as well as to reduce the verdict. ProMutual funded all of Nurse Loan’s defense fees and costs throughout the trial and the motions for post-judgment relief.
ProMutual contends that based on the evidence at trial and its review of the post trial motions, it believed that it would be unlikely that Nurse Loan would obtain any post-judgment relief or prevail on appeal. While the post-trial motions were pending, ProMutual attempted to obtain a release of Nurse Loan from the Lucases in exchange for ProMutual’s payment of its $2 million policy limits to the Lucases. Nurse Loan states that the release which ProMutual attempted to obtain post verdict was the same release that she had demanded ProMutual obtain prior to judgment in response to the Lucases’ counsel demand for settlement within ProMutual’s Policy limit.
After the Lucases refused to release Nurse Loan in exchange for ProMutual’s payment of its policy limits, ProMutual confirmed with Nurse Loan’s personal counsel, Michael Mahoney (“Nurse Loan’s counsel”), that Nurse Loan had no objection to ProMutual’s payment of its policy limits, even in the absence of a release. Defendants contend that at this time ProM-utual did not disclose its intention not to fund an appeal. On April 1, 1998, the court approved a motion to distribute the policy proceeds which was assented to by both ProMutual and Nurse Loan.[3] Accordingly, on April 2, 1998, ProMutual paid to the Lucases, in partial satisfaction of the judgment against Nurse Loan, its $2 million Policy limit, as well as all post-judgment interest that had accrued on the judgment.
On or about April 29, 1998, the court (White, J.) denied Nurse Loan’s motions for postjudgment relief. Specifically, as to the motions for a new trial and judgment notwithstanding the verdict, the court found that there was sufficient evidence to support the verdict and that the verdict was not against the weight of the evidence. As to the motion to reduce the verdict, the court stated that there was no reason to revisit or revise her trial rulings on damage issues.
By letter dated May 28, 1998, ProMutual notified Nurse Loan’s attorney that ProMutual had authorized defense counsel to file a notice of appeal at ProMutual’s expense. ProMutual sent copies of that letter to counsel for the Hospital and counsel for Lexington Insurance Company (“Lexington”), which had issued an excess insurance policy to the Hospital covering the period from January 13, 1994 to January 13, 1995. In the letter, ProMutual informed Nurse Loan that it had only authorized defense counsel to file a notice of appeal because it was necessary to preserve Nurse Loan’s right to pursue an appeal should she elect to do so. ProMutual further informed Nurse Loan that because it had exhausted its Policy limits in partial satisfaction of the judgment in the Lucas action, it believed that it had no obligation to fund an appeal.
On June 5, 1998, ProMutual’s counsel sent a letter to Nurse Loan’s counsel and sent copies of said letter to counsel for Lexington and the Hospital. This letter reiterated ProMutual’s belief that it had no obligation to fund an appeal because it had exhausted its policy limits in partial satisfaction of the judgment in the Lucas action. This letter also noted that ProMutual had authorized defense counsel to order the trial transcript and had advanced the cost of the transcript, because such actions were necessary to preserve *116 Nurse Loan’s right to an appeal. ProMutual again expressly reserved the right to discontinue funding any further fees or costs associated with an appeal, and to seek judicial determination concerning whether or not it was obligated to fund an appeal.
On or about February 17,1998, Lexington had filed a declaratory judgment against Newell Health Care Systems, Inc., the Hospital, and Nurse Loan (collectively the “Lexington action”). The Lexington action, filed just days after the verdict in the Lucas action, seeks a determination concerning the applicability of the Lexington excess policy issued to the Hospital to the judgment in the Lucas action. Lexington’s request for a declaration that the excess policy does not apply rests solely on its allegation that the Hospital did not timely notify Lexington of the Lucas action. Nurse Loan has filed a cross-claim against the Hospital in the Lexington action. Nurse Loan alleges that if the Lexington excess policy is held not to apply to the Lucas action, the Hospital will be liable for the excess verdict against Nurse Loan and any costs incurred by her in defending herself in the Lucas action due to its negligent failure to give Lexington timely notice of the Lucas Action.
DISCUSSION
Summary judgment shall be issued when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and therefore that it is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The court should not weigh evidence, assess credibility or find facts. The court may only consider undisputed facts and apply them to law. Kelley v. Rossi, 395 Mass. 659, 663 (1985).
In support of its motion for summary judgment, ProMutual contends that its duty to defend ended when it paid its policy limits in satisfaction of a judgment. Pursuant to the Policy, ProMutual “shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company’s liability has been exhausted by the payment of judgments or settlements.” A Massachusetts court has held that a fair reading of substantially similar language is that the insurer would be discharged from any further duty to defend if it should make a payment equal to the maximum policy limits either to settle a claim against the insured or in total or partial satisfaction of a judgment against the insured upon conclusion of the litigation. Aetna Casualty & Surety Company v. Sullivan, 33 Mass.App.Ct. 154, 157 (1992).[4] The court reasoned that an insured could not reasonably expect more than the insurer exhausting its policy limits and providing a defense. Id. at 158. This is certainly not to say that an insurer is free, regardless of the merits of the claim, to tender the coverage limits and decline to defend whenever the insurer anticipates that the cost of providing a defense would exceed the amount of coverage. Id.[5]
Accordingly, many courts construing policies such as the one at issue have ruled that an insurer’s tender of the policy limits does not end its duty to defend a claim against its policyholder unless the payment is made after judgment or settlement. Id. at 159 (emphasis added); see e.g. Zurich Insurance Co. v. Raymark Industries, 514 N.E.2d 150 (Ill. 1987) (holding that pursuant to policy language, when the insurer has properly exhausted its policy limits by payment of judgment and/or settlements, it is no longer obligated to defend any actions, whether such actions are pending at the time of exhaustion or commenced thereafter). In this case, the payment was in fact tendered after a jury trial and a judgment entered in excess of the policy limits; nevertheless, this Court’s analysis does not end here.
The question remains whether the duty to defend through the conclusion of litigation as articulated in Aetna v. Sullivan includes the duty to fund an appeal. Supra. The Court in Aetna v. Sullivan anticipated this question by citing with approval a Florida case which stated that “depending upon the reasonable likelihood of success on appeal, the insurer’s duty to defend may continue until an appeal has been disposed of.” Id. at 157 n. 2, citing Aetna Insurance Company v. Borrell-Bigby Electric Co., Inc., 541 So.2d 139 (Fla.App.Ct. 1989). In Borrell-Bigby, the court recognized that the duty to defend an insured is broader than the duty to indemnify. Id. at 141. Such a duty, the court held, precludes an insurer from interpleading its policy limits and walking away from the defense of its insured, at either the trial or appellate level. Id.[6] Thus, at a minimum, “where there are reasonable grounds to believe a substantial interest of the insured may be served or protected thereby, absent an express provision to the contrary, the insurer’s duty to defend includes the duty to seek post-judgment relief.” Truck Insurance Exchange v. Century Indemnity Co., 887 P.2d 455, 459 (Wash.App. 1995).
For the foregoing reasons, plaintiffs motion for summary judgment is DENIED. There is no action taken on defendants’ cross-motion for summary judgment because the issues required for that decision are not presently before this Court.

 ProMutual was formerly known as the Medical Malpractice Joint Underwriting Association of Massachusetts.

Subsequently, Madeleine Love was identified as Madeleine Loan, R.N.

In approving the motion, the court specifically noted: "This is not to be deemed as an approval of final settlement of a minor and it is entered without prejudice to pending post trial motions, yet to be heard and decided, and without prejudice to any appellate rights arising out of the post trial motions."

In Aetna Casualty & Surety Co. v. Sullivan, the policy at issue contained slightly different language. That policy stated, “Our duty to settle or defend ends when we have paid the maximum limits of coverage under this policy." 33 Mass.App.Ct. 154, 157 (1992).

In Sullivan, the insurer sought to tender $25,000 in policy limits only five months after a lawsuit was filed against the insured. The insurer then sought a declaration that having tendered its policy limits, it was discharged from its duty to defend. Id. at 155. The court made a distinction between an insurer seeking to pay the full amount of coverage without a judgment and without obtaining a release, and a situation such as the one at bar in which the insurer has exhausted policy limits and provided a defense. Id. at 158.

The Florida Court noted that its holding does not imply that such a policy provision offers no protection to the insurer. “As to actions instituted after the policy limits have been exhausted through the payment of valid judgment or settlement it may decline to defend." Aetna v. Borrell-Bigby Electric Co., Inc., 541 So.2d 139, 141 (Fla.App.Ct. 1989). “However, the insurer cannot truncate its defense obligations by leaping to pay a questionable judgment or claim ... it must first in good faith establish the validity of such a judgment before paying out its limits and ceasing to defend.” Id.