The plaintiff construction company, P. Gioioso & Sons, Inc. (Gioioso), purchased lower cost, high-deductible, occurrence-based insurance policies from the defendant, Liberty Mutual Insurance Company (Liberty), for five policy years. These policies required Liberty to pay all claims and then seek reimbursement from Gioioso of the deductible amounts. Additionally, Gioioso was required to post a letter of credit as security for its anticipated financial obligations under the policies.
Gioioso initiated this litigation in 2012, claiming that Liberty improperly inflated the amount of security it would require, needlessly tying up Gioioso's credit, in breach of the parties' agreements and G. L. c. 93A.[2] Liberty counterclaimed for a payment of $112,000 in outstanding premiums in connection with an earlier, retrospectively rated policy. Liberty also counterclaimed for attorney's fees and expenses (count II), relying on language in the contract governing the security obligation.
A Superior Court motion judge entered summary judgment in Liberty's favor on all claims except its claim for attorney's fees. Faced with cross appeals from the parties, we reverse that portion of the judgment pertaining to Liberty's request for fees and expenses (count II of its counterclaim). We affirm all other aspects of the judgment.
1. Breach of the security agreement. Gioioso began purchasing general liability, worker's compensation, and automobile insurance policies from Liberty in 2001, but switched to high-deductible policies requiring the posting of collateral in late 2005. Under its most recent policies, Gioioso's deductible amount was $300,000 for each covered loss. The policies are occurrence-based. In association with these high-deductible policies, the parties entered into an agreement for the guarantee of financial obligations ("security agreement"). The security agreement requires a "clean, irrevocable letter of credit" in an amount listed on an attached schedule, "subject to upward or downward adjustment in amounts by Liberty Mutual at least annually."[3]
The security agreement goes on to state:
"Liberty Mutual may, at its sole discretion, determine that the estimated amount of unpaid Obligations is greater than the amount of the existing letter of credit and, if so, Liberty Mutual shall have the option to require Policyholder to deliver, within (30) days of receipt by Policyholder of written notice by Liberty Mutual, an amendment to the existing letter of credit or an additional letter of credit ... so that the total amount of such letter(s) of credit equals the amount set forth on the most recent Schedule."
The most recent security agreement schedule, dated in 2009, requires a letter of credit in the amount of $2.2 million. That schedule includes the following additional provisions:
"This Schedule, and any amendments, additional Schedules, and updates thereto, are incorporated into and made a part of the [security agreement] entered into between Liberty Mutual and Policyholder .... It is expressly understood and agreed that the amount of collateral ... referenced on this Schedule may be adjusted at the sole discretion of Liberty Mutual to reflect then-current obligations. Policyholder agrees to provide Liberty Mutual with the referenced amounts and any required increases thereto by the Schedule date communicated by Liberty Mutual."
The motion judge determined that Gioioso failed to identify a genuine issue of material fact on its claims that Liberty breached the security agreement or the covenant of good faith and fair dealing implied therein.[4] We agree.
"It is ... elementary that an unambiguous agreement must be enforced according to its terms." Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 706 (1992). This is no less true in the insurance context. See Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 146 (1982). Moreover, "[t]he responsibility of construing the language of an insurance contract is a question of law for the trial judge, and then for the reviewing court." Ibid.
We agree with the motion judge that there is no ambiguity in the security agreement's language conferring "sole discretion" on Liberty to determine the amount of required security. Gioioso was twice informed of this discretion in the plain language of the contract. Accordingly, the motion judge was correct that Liberty's calculation of the security amount-by whatever method it saw fit-could not constitute a breach of the express contract between the parties.[5]
Additionally, we agree that Gioioso failed to identify a genuine dispute of material fact whether Liberty violated the implied covenant of good faith and fair dealing in calculating the security amount. The implied covenant "provides 'that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract ....' " Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471 (1991), quoting from Drucker v. Roland Wm. Jutras Assocs., 370 Mass. 383, 385 (1976). Accordingly, a misuse of discretion as a means by which to extract concessions from a contract partner may be a breach of the implied covenant. Anthony's Pier Four, 411 Mass. at 473. The scope of the covenant, however, is "only as broad as the contract that governs the particular relationship." T.W. Nickerson, Inc. v. Fleet Natl. Bank, 456 Mass. 562, 570 (2010), quoting from Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 385 (2005).
Gioioso submitted two affidavits in opposition to Liberty's motion for summary judgment. The motion judge wrote that "the court has had difficulty in understanding the point being made in the affidavits" but in any event, the fact that one or both of the affiants may have used a method different from Liberty's in calculating the security amount "does not create a triable issue of fact on the question of whether Liberty acted in good faith." Having reviewed the affidavits, we agree that they do not raise a genuine factual dispute as to any issue material to Gioioso's claims.
Here, Gioioso has identified no manner in which it has been deprived of any fruit of its contracts with Liberty,[6] nor has Gioioso suggested in any way that Liberty has used the security agreement to extract a concession from Gioioso.[7] ,[8] Accordingly, the judge correctly determined that Liberty was entitled to judgment as a matter of law on Gioioso's claim for breach of the implied covenant.
2. Gioioso's c. 93A claim. The motion judge determined that because Gioioso did not demonstrate a genuine issue of fact on its contract claims, its claim for unfair business practices pursuant to G. L. c. c. 93A, § 11"must also be dismissed." Gioioso argues that a c. 93A claim is sui generis and does not necessarily rise or fall with its contract claims. While this proposition is correct as a general matter, see Kattar v. Demoulas, 433 Mass. 1, 12-13 (2000) ; Gath v. M/A-COM, Inc. v. M/A-Com, Inc., 440 Mass. 482, 498 (2003), it does not help Gioioso here because Gioioso's theories as to how Liberty violated c. 93A are coextensive with its contract theories.
Here, for the same reasons already described, Gioioso failed to establish a dispute of material fact whether Liberty's exercise of its discretion to determine the security amount was an unfair or deceptive practice in the business-to-business context. See Duclersaint v. Federal Natl Mort. Assn., 427 Mass. 809, 814 (1998) ("[A] good faith dispute as to whether money is owed, or performance of some kind is due, is not the stuff of which a c. 93A claim is made"); Giuffrida v. High Country Investor, Inc., 73 Mass. App. Ct. 225, 238 (2008), quoting from Chapter 93A Rights and Remedies § 2.5, at 2-67 (Mass. Cont. Legal Educ. 2d ed. 2007) ("[B]usinesses seeking relief under Section 11 are held to a stricter standard than consumers in terms of what constitutes unfair or deceptive conduct").[9]
3. Liberty's breach of contract claim. Under Gioioso's commercial general liability policy for the year ending in November, 2005, Liberty had the "right and duty to defend the insured against any suits seeking damages." Additionally, the policy stated, Liberty "may, at [its] discretion, investigate any occurrence and settle any claim or suit that may result."
In 2007, the First Baptist Church in Dorchester (First Baptist) sued Gioioso in connection with excavating work Gioioso had performed. Liberty assumed the defense and tried the case, resulting in a jury verdict against Gioioso in the amount of $288,295 plus prejudgment interest. Liberty filed a notice of appeal but then declined to prosecute the appeal, and instead settled the case.
Under the 2004-2005 policy, Liberty claims that Gioioso owes it $112,997 in retrospective premiums in connection with the First Baptist loss. Gioioso does not argue with Liberty's mathematical calculation, but claims it does not owe Liberty any money because Liberty should have pursued the appeal. Liberty, on the other hand, argues that under the relevant policy it had full discretion to settle the First Baptist case.
"Depending upon the reasonable likelihood of success on appeal, the insurer's duty to defend may continue until an appeal has been disposed of." Aetna Cas. & Sur. Co. v. Sullivan, 33 Mass. App. Ct. 154, 157 n.2 (1992). Gioioso argues on the basis of Davis v. Allstate Ins. Co., 434 Mass. 174, 180 (2001), which recites a slightly different formulation of this rule, i.e., that "an insurer's duty to defend generally encompasses an obligation to appeal from an adverse judgment against its insured, but only if reasonable grounds exist to believe the insured's interest might be served by the appeal."
Gioioso's argument that there was an issue of material fact on this point places too much weight on Davis's use of the word "might," and too little on the existence of a reasonable likelihood of success on appeal. Davis relied upon Aetna Cas. & Sur. Co. v. Sullivan, supra, which made clear that "[d]epending upon the reasonable likelihood of success on appeal, the insurer's duty to defend may continue until an appeal has been disposed of." Id. at 157 n.2. An insurer can only be obligated to pursue an appeal where there are "reasonable grounds" for the appeal. Davis, 434 Mass. at 180-181, citing 14 G. Couch, Insurance § 200.48, at 220-118 (3d ed. 1999).
As evidence of reasonable grounds for appeal in the First Baptist case, Gioioso points to three sources: (i) a letter from its own lawyer, Douglas E. Sylvia, advocating for an appeal; (ii) an e-mail from Gioioso's trial lawyer, David R. Cain; and (iii) a letter from Robert A. Curley, Jr., an attorney hired by Liberty to review the trial transcript and make recommendations.
The only viable grounds for appeal articulated in these three communications all relate to the exclusion of certain evidence by the trial judge. Both Curley and Sylvia expressly acknowledged in their letters, however, that the exclusion of evidence is reviewed only for an abuse of discretion and an error in such a ruling will result in a new trial only if it prejudiced the proponent of the evidence. See Lind v. Domino's Pizza LLC, 87 Mass. App. Ct. 650, 663 & n.14 (2015).
Moreover, Cain, the trial lawyer, wrote in his e-mail that "my memory and my notes are that [the trial judge] was careful enough in her rulings ... to survive review." And Curley, the attorney hired by Liberty, opined that only one of five possible evidentiary errors presented a viable issue and the likelihood of getting a new trial based on that single error was less than ten percent. He further advised that an appellate court would most likely hold that the error was harmless.
These communications simply do not establish that a "reasonable ground" existed for an appeal, nor do they create a dispute of fact on the issue. Additionally, Liberty correctly relies on the policy language stating that it "may, at [its] discretion ... settle any claim or suit [resulting from an occurrence]." "We interpret these terms according to the 'fair meaning of the language used, as applied to the subject matter.' " Davis, 434 Mass. at 179, quoting from Bilodeau v. Lumbermens Mut. Cas. Co., 392 Mass. 537, 541 (1984). The fair meaning of this language leaves the matter of settlement entirely to the discretion of Liberty. Nonetheless, however, in exchange for that discretion, Liberty was bound by a reciprocal obligation to act in "good faith." Murach v. Massachusetts Bonding & Ins. Co., 339 Mass. 184, 187 (1959).
In this context, good faith requires that the insurer "exercise common prudence to discover the facts as to liability and damages upon which an intelligent decision may be based." Ibid. It is apparent from the uncontroverted evidence in the record that Liberty exercised common prudence to vet the possibility of an appeal, and that its decision to settle had an intelligent and reasoned basis. That Gioioso disagrees with Liberty's decision does not create an issue of fact regarding whether Liberty exercised its discretion in good faith. Accordingly, Liberty was entitled to summary judgment on count I of its counterclaims.[10]
4. Attorney's fees. Finally, we reach Liberty's cross appeal from the motion judge's denial of its request for an award of attorney's fees and expenses based on the following provision found in the security agreement:
"The Policyholder will pay to Liberty Mutual upon demand, any and all reasonable expenses, including without limitation, reasonable legal fees and expenses and the fees and expenses of any experts and agents which Liberty Mutual may incur in connection with (a) the exercise or enforcement of any of the rights or remedies of Liberty Mutual hereunder and/or (b) the failure by Policyholder to perform or observe any of the provisions hereof."
In interpreting a written contract, "the court gives full effect to all the terms expressed by the parties." Robbins v. Krock, 73 Mass. App. Ct. 134, 138 (2008), quoting from Rogaris v. Albert, 431 Mass. 833, 835 (2000). The words used by the parties will be given their ordinary meaning unless otherwise indicated in the contract document. Ibid. And, fundamentally, "[i]t is not the role of the court to alter the parties' agreement."Ibid.
Liberty's defense of Gioioso's suit fits squarely within the plain language of the contract, which allows recovery of fees and expenses incurred "in connection with" the "exercise or enforcement of any of the rights or remedies of Liberty Mutual hereunder." We reject Gioioso's contention that its status as plaintiff rather than defendant is dispositive of the question. Even though Gioioso complied with the security agreement by posting letters of credit as required, its initiation of a lawsuit claiming that Liberty had violated the agreement by requiring the posting of those same letters forced Liberty to "exercise or enforce" its rights by mounting a defense to Gioioso's claims.
Moreover, the motion judge's more narrow reading of the fee-shifting clause-that it applies only to fees incurred as a result of a breach of the security agreement's terms-would render the provision's second clause, lettered "(b)," superfluous. Because the contract expressly provides in clause (b) for fee-shifting in the event that the policyholder fails to "perform or observe any of the provisions hereof," the prior clause, lettered "(a)," must have a more expansive meaning-extending to the exercise of rights even where the policyholder is not strictly in breach of the security agreement. See DeWolfe v. Hingham Centre, Ltd., 464 Mass. 795, 804 (2012) ("Wherever practicable, we interpret a contract so that every word is given effect").[11]
Accordingly, Liberty is entitled by contract to an award of fees and expenses incurred in connection with its defense of Gioioso's claims. Liberty is not, however, entitled to an award of fees associated with prosecuting its counterclaim regarding the First Baptist litigation, which was an action to enforce its rights under an insurance policy and was not brought in connection with any rights or remedies found in the security agreement.[12] Additionally, Liberty is not entitled to attorney's fees incurred on appeal because it did not request the same in its brief, as required by Fabre v. Walton, 441 Mass. 9, 10 (2004). See Beal Bank, SSB v. Eurich, 448 Mass. 9, 12, 14 (2005) (entitlement to appellate fees is waived if not requested brief, and this rule applies to fees sought under contract as well as fees sought under statute).
The portion of the judgment dismissing count II of the defendant's counterclaim is reversed, and that matter is remanded to the Superior Court for a calculation of reasonable legal fees and expenses incurred in connection with Liberty's defense of this action, exclusive of both (i) fees and expenses incurred in connection with count I of Liberty's counterclaims, and (ii) fees and expenses incurred in connection with this appeal. In all remaining respects, the judgment is affirmed.
So ordered.
Reversed in part; affirmed in part.

Gioioso also asserted claims for breach of fiduciary duty and injunctive relief, but does not pursue those claims on appeal.

For each policy year, Gioioso was required to enter a new security agreement or amend the existing security agreement. The most recent security agreement between the parties was executed in 2009 in connection with Gioioso's policy for policy year ending in late 2010. The record reveals no material changes in language among the different versions of the security agreements, and we therefore quote from the most recent security agreement unless otherwise specified. For convenience, we refer collectively to all versions of the security agreement in the singular.

A summary judgment decision is upheld when it is based on undisputed material facts and is correct as a matter of law. See Currier v. National Bd. of Med. Examrs., 462 Mass. 1, 11 (2012).

Liberty's inclusion in the security requirement of the $112,000 owed from the earlier, retrospectively rated policy did not breach the security agreement because that document's plain language states that it is intended to secure all of Gioioso's obligations "arising out of or in connection with any and all insurance policies issued to [Gioioso]."

Gioioso's theory that Liberty somehow gained a broader market advantage by over-reaching on security requirements and then reporting the amount of its collateral on financial disclosure documents is unavailing. As a threshold matter, we agree with the motion judge that Gioioso failed to provide admissible evidence supporting this theory. See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 714 (1991). But even assuming arguendo that Liberty was over-secured and obtained a market advantage because of it, such evidence would have had no tendency to show that Liberty violated the implied covenant of good faith and fair dealing inherent in the particular contracts at issue here. The purpose of the implied covenant "is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." T.W.Nickerson, 456 Mass. at 570, quoting from Uno Restaurants, Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004). "A breach occurs when one party violates the reasonable expectations of the other." Eigerman v. Putnam Invs., Inc., 450 Mass. 281, 287-288 (2007). Here, Liberty's broad discretion to set the amount of the security requirement was apparent from the plain language of the contract. Ibid. Any expectation harbored by Gioioso that Liberty would not exercise its discretion in such a way as to further its business interests would not have been a reasonable expectation. Id. at 289. Thus, Gioioso's claim is not viable here, where: (i) the ulterior motive Gioioso ascribes to Liberty had nothing to do with depriving Gioioso of any benefit of the subject contract, and (ii) Gioioso agreed that Liberty would have sole discretion to set the security amount.

Gioioso's claim that Liberty improperly offered to accept a letter of credit in a reduced amount on the condition that Gioioso would affirm that the security agreement remains in effect is not properly before the court. The complaint does not include this allegation; the facts related to it did not occur until after October 12, 2012, the date the complaint was filed. Although Gioioso moved to amend its complaint and for class certification in May, 2013, that motion was denied. The record does not reveal what changes were proposed in the motion to amend (other than adding a class-based claim), but Gioioso has not appealed from the denial of the motion to amend in any event. Accordingly, this theory was never properly before the motion judge and is not properly before this court. Moreover, we do not believe Liberty's attempt to preserve the legal status quo as a condition of accepting reduced security after the commencement of litigation has the sort of extortionate or coercive quality that would amount to a violation of the implied covenant or c. 93A.

We agree with the motion judge that Liberty's failure to inform Gioioso at some earlier point in time that Liberty had applied a liquidation credit to the security amount and would cease doing so if Gioioso stopped buying insurance from Liberty does not change the outcome. The parties' security agreement was clear insofar as it conferred "sole discretion" upon Liberty to calculate the security amount. That Gioioso privately assumed that the required security amount would automatically decline once Gioioso stopped purchasing new policies from Liberty was not the fault of Liberty.

Gioioso also appeals from the decisions on various discovery motions. Having reviewed the record carefully, we see no abuse of discretion in the judge's handling of the discovery issues. See Solimene v. B. Grauel & Co., K.G., 399 Mass. 790, 799 (1987).

We need not reach Liberty's argument that it risked liability pursuant to G. L. c. 176D and G. L. c. 93A if it did not settle with First Baptist once liability was reasonably clear.

Because we find that the language of the security agreement is unambiguous, we need not reach the motion judge's alternative holding that even if the fee-shifting language were ambiguous it would be construed against Liberty.

Liberty's argument as to an alternative basis for a fee award with respect to count I of its counterclaim is limited to a single paragraph in its brief, which simply provides the relied upon language. This treatment does not rise to the level of reasoned appellate argument and we need not consider it. See K.A. v. T.R., 86 Mass. App. Ct. 554, 567 (2014) ; Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).